**SKIPPY, INC., Appellant,**

v.

**CPC INTERNATIONAL, INC., Appellee.**

**SKIPPY, INC., Appellee,**

v.

**CPC INTERNATIONAL, INC. Appellant.**

**Nos. 81–1043, 81–1044.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 5, 1981.

Decided March 5, 1982.

Rehearing and Rehearing En Banc Denied May 3, 1982.

---

Stephen M. Trattner, Washington, D. C. (Thomas B. Shull, J. Michael Cleary, Brylawski & Cleary, Washington, D. C., on brief), for appellant/cross-appellee.

Wm. Mack Webner, Arlington, Va. (Littlepage & Webner, Brian P. Gettings, Harvey B. Cohen, Arlington, Va., Joanne F. Alper, Washington, D. C., Cohen, Gettings & Sher, Arlington, Va., on brief), for appellee/cross-appellant.

Before BUTZNER, WIDENER and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

This appeal and cross appeal are from a trademark infringement and unfair competition suit in which the plaintiff charged the defendant with infringement of its *Skippy* trademark. Defendant cross-claimed for damages for breach of contract and certain declaratory and injunctive relief based on its rights in the *Skippy* trademark. The district court granted defendant partial summary judgment, dismissing all plaintiff's claims for damages. After a nonjury trial on the merits, judgment for defendant was entered on plaintiff's claims for declaratory and injunctive relief. The district court held for the plaintiff on defendant's cross-claim for damages. The district court also held for the plaintiff on defendant's claim that plaintiff had abandoned its trademark rights in the mark *Skippy*. The district court granted defendant's cross-claim for a declaratory judgment that its registration of the mark *Skippy* had become incontestable pursuant to 15 U.S.C. § 1115.

Plaintiff appeals the judgment against it on its damage claims. It also appeals denial of its claims for declaratory and injunctive relief. Plaintiff asserts that it is entitled to a new trial on all its claims since it was denied a jury trial. In addition, plaintiff appeals the declaratory judgment for defendant on its claim to incontestable rights. Defendant cross appeals the district court's denial of its cross-claim for a declaratory judgment that plaintiff had abandoned its rights to the *Skippy* mark. We affirm the district court's resolution of these issues, except the declaratory judgment that defendant's right to the mark *Skippy* for peanut butter had become incontestable, which must be vacated.

In March of 1923, Percy L. Crosby created a cartoon featuring a school-aged child he named Skippy. Within a few years of its creation the cartoon had been syndicated to newspapers throughout the country, where it was published as a newspaper comic strip. During the first decade of publication, and to a lesser extent thereafter, Crosby capitalized on the popularity of the "Skippy" comic strip by marketing "Skippy" cartoon books, magazine articles and novels. Crosby also licensed rights to use the Skippy name and concept to commercial interests for product endorsements, radio programs and at least one motion picture.

In 1925 Crosby obtained a federal trademark for the mark *Skippy* for the title of cartoons depicting a humorous juvenile character. Skippy, Inc., the appellant/cross appellee herein and plaintiff below, was organized by Crosby in 1932. Crosby reportedly transferred his rights in the *Skippy* trademark to Skippy, Inc. in return for stock in the corporation. CPC International, Inc., appellee/cross appellant herein and defendant below, acquired its right to the mark *Skippy* for peanut butter in a 1958 merger with The Best Foods, Inc. Best Foods had acquired Rosefield Packing Company in 1954, obtaining with it Rosefield's

rights to the mark *Skippy* for peanut butter. Rosefield began marketing Skippy brand peanut butter in 1933 when it was a fledging packing company distributing food products in the California area.

Rosefield initially placed a white slat fence and a bucket with a paintbrush in it on its Skippy peanut butter labels. The white slat fence, the bucket and brush, and the hand painted name *Skippy*, all appearing on the label of Rosefield's peanut butter, were arguably suggestive of Crosby's "Skippy" comic strip. Rosefield, Best Foods and CPC continued to use the fence, the bucket and brush and the hand painted *Skippy* mark on their labels until approximately 1960.

Syndication of the "Skippy" comic strip ceased in 1945, but Crosby and Skippy, Inc., continued to seek commercial uses for the Skippy cartoon character after 1945. In 1947 Skippy, Inc. retained the Al Dvorin advertising agency to promote and license the *Skippy* mark and concept. It is apparent that these efforts met with little success since Skippy, Inc.'s total income from 1945 to 1980 was $45,000, with $25,000 of this sum being received from CPC for what CPC asserts was a settlement of the parties' differences over use of the *Skippy* mark.

Skippy, Inc.'s federal registration of the *Skippy* mark was not renewed when it expired in 1945. In 1947 Rosefield registered the mark *Skippy* for peanut butter without opposition from Skippy, Inc. From 1958 to 1979 net sales of Skippy peanut butter totaled $1,218,000,000. Marketing and advertising expenses during that same period totaled $105,700,000.

Management of Skippy, Inc. changed hands in 1968 when Joan Crosby Tibbetts was elected president. In early 1977 Tibbetts advised CPC of her knowledge that Skippy, Inc. had successfully opposed Rosefield's attempts, in 1933, to register the mark *Skippy* for peanut butter. Shortly thereafter Tibbetts began negotiating with CPC to settle any claims that Skippy, Inc. might have against CPC. From May 1977 until September 1977, Tibbetts discussed several matters with CPC, including what

came to be designated an "option" agreement entitling CPC to use the mark *Skippy* and the Skippy cartoon character in advertising its food products. This agreement contained a release of CPC by Skippy, Inc.

The district court, Judge Albert V. Bryan, Jr., presiding, granted CPC partial summary judgment and dismissed Skippy, Inc.'s claims for monetary damages on grounds of laches. Skippy, Inc. now appeals the grant of partial summary judgment, asserting that laches is not a defense to a claim for damages. Skippy, Inc. also asserts that laches, even if applicable to claims for damages, was improperly applied to the instant damage claims since Rosefield and its successors were guilty of bad faith infringement.

■ Laches is a defense to claims for damages for trademark infringement and unfair competition. *Greyhound Corp. v. Rothman*, 84 F.Supp. 233 (D.Md.1949), aff'd, 175 F.2d 893 (4th Cir. 1949); *Worcester Brewing Corp. v. Rueter & Co.*, 157 F. 217 (1st Cir. 1907); 1 Gilson, *Trademark Protection & Practice* § 8.12[12][K]. While the availability of laches as a defense to claims for injunctive relief may be limited when the defendant is guilty of bad faith infringement, see *Menendez v. Holt*, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888) and *Saxlehner v. Eisner*, 179 U.S. 19, 21 S.Ct. 7, 45 L.Ed. 60 (1900), laches will bar a claim for damages for bad faith infringement. *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916); *Greyhound, supra.*

■ Skippy, Inc.'s failure to pursue its claims against Rosefield from the late 1940's until 1979, when the instant suit was filed, convinces us that Judge Bryan did not abuse his discretion in applying laches to bar Skippy, Inc.'s claims for damages for trademark infringement and unfair competition.

Skippy, Inc.'s claims for declaratory and injunctive relief were tried nonjury to the district court, Judge Oren R. Lewis presiding. Judge Lewis held for CPC on Skippy, Inc.'s claims for declaratory and injunctive

relief. The holding was based on several grounds, including Skippy, Inc.'s release of CPC from all Skippy, Inc.'s claims against CPC for use of the mark *Skippy* for peanut butter. We address only the release defense since we find the district court was not clearly erroneous in ruling that the release barred Skippy, Inc.'s claims against CPC for use of the mark *Skippy* for peanut butter.

The release of CPC by Skippy, Inc. obligated Skippy, Inc. to hold CPC harmless "from any and all differences and controversies which may have existed in the past or may now exist . . . as relates to the use of the . . . name 'Skippy' ". After hearing the evidence on negotiation of this release, the trial court concluded that the release was a settlement of the parties' differences over CPC's continued use of the mark *Skippy* for peanut butter. On appeal Skippy, Inc. asserts that the trial court was clearly erroneous in enforcing the release since it was procured by fraud. The first alleged fraud in the procurement of the release was "CPC's alleged false representations that it wanted to execute [a] marketing agreement" with Skippy, Inc. entitling CPC to use the Skippy cartoon character in advertising Skippy peanut butter. According to Skippy, Inc., CPC made these representations when it had already selected another advertising concept.

■ When Skippy, Inc. threatened to sue CPC in March of 1977, CPC assigned attorney Hanes Heller to handle the threatened suit. Between May and September of 1977, Tibbetts, on behalf of Skippy, Inc., and Heller, on behalf of CPC, engaged in negotiations for settlement of CPC's asserted past wrongs and discussions involving future income to Skippy, Inc. from use of the Skippy cartoon character in advertising CPC's peanut butter. Tibbetts testified that Heller orally represented that CPC had selected a concept involving use of the Skippy character. Heller testified that no such representations were made. Judge Lewis apparently credited Heller over Tibbetts, a judgment we do not find to be clearly erroneous.

The second assertion of fraud in procurement of the release was the alleged refusal to CPC and its present attorneys, Lord, Day & Lord, to permit Skippy, Inc. access to its own files and records until after the release had been signed. CPC's present attorneys represented Crosby and Skippy, Inc. in the 1930's and 1940's. In 1965, during a contest over Crosby's estate, Tibbetts requested that Lord, Day & Lord give her any old files that may have been retained. Lord, Day & Lord did not send Tibbetts any files and she did not immediately renew her request for them. Tibbetts made another request for the files in 1976, at which time Lord, Day & Lord advised her that most of the files had been sent to another law firm, but noted that some of the files had been retained. Lord, Day & Lord agreed to Tibbetts' review of the retained files subject to its own review of them.

■ Skippy, Inc. asserts that it proved that Henry Baldwin of Lord, Day & Lord assured Tibbetts that the files it retained involved only closed matters while at the same time advising CPC that turning over the files might be prejudicial. It also claims it proved Lord, Day & Lord refused access to the files until after the release was signed. In addition, Skippy, Inc. asserts, without getting specific, that these files contained information necessary to maintain this action. CPC denies the files contained any prejudicial information that Tibbetts did not already have, and we assume there was no prejudicial information in them since Skippy, Inc. failed to offer any specific proof of prejudice. Henry Baldwin of Lord, Day & Lord denied having refused access to the files, but acknowledged that he had asked Tibbetts to wait to receive the files until after the option agreement was signed. A finding by the district court that Baldwin's request that Tibbetts wait to receive the files, until after the so-called "option" agreement had been completed, did not fraudulently induce the "option" agreement nor materially relate to it, is not clearly erroneous. We read the district court's statement that the "claim that the release was obtained by fraud or trickery lacks both evidentiary and legal

support" to be a finding of fact and affirm on this basis as well.

Skippy, Inc. contends that this matter should be remanded for a new trial of all its claims since it was denied its Seventh Amendment right to jury trial. Skippy, Inc. argues it is entitled to a jury trial since it alleged a claim for damages for fraudulent procurement of the release obtained by CPC.

■ Charges of fraud raise difficult questions about the right to jury trial. Both professors Wright and Moore agree that fraud is not peculiarly a legal issue nor an equitable issue. 9 Wright & Miller, *Federal Practice and Procedure* : Civil § 2311 at 52 (1971); 5A Moores Federal Practice ¶ 38.20. The jury right turns on the remedy sought and the context in which the claim arises. "When the only remedy sought for fraud is damages, the action is legal in nature and there is a right to jury trial." Wright & Miller, *supra.*

Skippy, Inc. alleged the facts underlying its fraudulent procurement claim in its complaint and also included a general prayer for monetary damages. Skippy, Inc. timely demanded a jury trial, making no specification of the issues to be so tried. These precautions would ordinarily entitle Skippy, Inc. to a jury trial on the fraudulent procurement issue. *Millner v. Norfolk & Western Railway Company*, 643 F.2d 1005, 1010 (4th Cir. 1981).

■ When the district court was considering whether to provide a jury trial as demanded, Skippy, Inc. did not inform the court of its claim for damages for fraudulent procurement of the release. Instead, Skippy, Inc. argued first, that it was entitled to a jury trial on its claims for damages for trademark infringement and later, that

it was entitled to a jury trial on its claims for damages for unfair competition. At no time did Skippy, Inc. raise the issue of its claim for damages for fraudulent procurement of the release. The district court correctly ruled that Skippy, Inc. was not entitled to a jury trial on its claims for trademark infringement and unfair competition. We are now urged to reverse the district court and order a new trial on the basis of an argument not raised before the district court.

The complaint filed by Skippy, Inc. does not clearly evidence an intent to seek damages for fraudulent procurement of the release.[1] The fact that the complaint could be read to state a claim for damages for fraudulent procurement of the release was apparently not discovered until after trial. At a June 24, 1980 hearing, Judge Bryan, in an order from the bench, dismissed all of Skippy, Inc.'s claims for damages. At this hearing the only causes of action discussed were those for trademark infringement. When Judge Bryan dismissed the damages portion of the action, counsel for CPC asked whether the case would proceed nonjury. Judge Bryan responded affirmatively, stating that only injunctive issues remained and that these were not proper for a jury. Counsel for Skippy, Inc. raised one question at this time, but failed to inform the court that in dismissing all damages claims, the court was overlooking the claim for damages for fraudulent procurement of the release.

Three days later CPC filed a motion to reconsider the order striking all damage claims. This motion to reconsider was based on Judge Bryan's failure to address CPC's claim for damages for unfair competition. The motion did not mention Skippy,

---

1. The complaint filed by Skippy, Inc. is divided into four sections: statement of the case, statement of the claim (facts), statement of the counts, and prayers for relief. The statement of counts is in three separate sections: federal trademark infringement; common law trademark infringement and unfair competition; and federal unfair competition. The statement of the claim section sets forth the basic factual allegations underlying the three separate counts and four enumerated causes of action. The statement of the claim section also sets forth the basic factual allegations underlying the asserted fraudulent procurement of the release. The asserted fraudulent procurement of the release is not listed nor discussed in the statement of the counts, the portion of the complaint separately naming all of Skippy, Inc.'s theories of liability except fraudulent procurement of the release.

Inc.'s claim for damages for fraudulent procurement of the release.

Less than one month later, on July 18, 1980, Judge Bryan convened a hearing on CPC's motion to dispose of the balance of the case on grounds of the defense of release. Judge Bryan denied this motion because of factual issues presented by the alleged fraudulent procurement of the release. Judge Bryan's acknowledgement of the fraudulent procurement issue came just 25 days after he dismissed all of Skippy, Inc.'s damage claims. Apparently he read the portion of the complaint alleging fraudulent procurement to state a basis for rescinding the release and not as a claim for damages. As shown above at note 1, this is a reasonable interpretation of the complaint.

In the absence of exceptional circumstances, questions not raised and properly preserved in the trial forum will not be noticed on appeal. *Malbon v. Pennsylvania Millers Mutual Insurance Company*, 636 F.2d 936, 941 (4th Cir. 1980); *United States v. One 1971 Mercedes Benz, Etc.*, 542 F.2d 912, 915 (4th Cir. 1976). Skippy, Inc.'s failure to apprise the court that it sought damages for fraudulent inducement of the release convinces us that such damages were not contemplated until after trial and that Skippy, Inc. raises the cause of action now merely to get a new trial on the other claims actively pursued below. Since Skippy, Inc. failed altogether to pursue its claim for damages for the alleged fraudulent inducement, it was not prejudiced by the district court's failure to give it a jury trial on a claim not contemplated at trial. We perceive no exceptional circumstances making consideration of the damages for fraud claim at this late date proper and decline to do so.

Skippy, Inc. also contends that the fraud asserted in avoidance of CPC's defense of release entitled it to a jury trial on the validity of the release whether or not it sought damages for this alleged fraud. In an action in which the issues are otherwise legal, fraud asserted in avoidance of a defense of release, whether asserted in response to the defense or in a complaint that anticipates that defense, entitles the plaintiff to a jury trial on the validity of the release. 5A *Moores Federal Practice, supra*; Wright and Miller, *supra*, at 59–60; *Bowie v. Sorrell*, 209 F.2d 49 (4th Cir. 1953). In an action in which the issues are otherwise equitable, the same rule does not necessarily apply. See *Liberty Mutual Ins. Co. v. Gerald*, 170 F.2d 917 (5th Cir. 1948) and *New Hampshire Fire Insurance Company v. Perkins*, 28 F.R.D. 588 (D.Del.1961).

In the instant case the district court apparently construed the fraudulent procurement allegations in the complaint to state grounds for rescission of the release and maintenance of Skippy, Inc.'s claims for trademark infringement. Skippy, Inc. did nothing to indicate that such a construction of the complaint was erroneous. The district court properly dismissed Skippy, Inc.'s claims for damages leaving only claims for injunctive relief. In this posture the case presented issues purely equitable in nature that could be resolved by the court without empaneling a jury. *Robine v. Apco, Inc.*, 227 F.Supp. 512 (S.D.N.Y.1964) aff'd, 386 F.2d 267 (2nd Cir. 1967); and *Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296 (9th Cir. 1979).

Skippy, Inc. also argues that it is entitled to a new trial on all its claims since it was entitled to a jury trial on CPC's compulsory counterclaim for damages. Since the district court entered judgment for Skippy, Inc. on CPC's counterclaim for damages, Skippy, Inc.'s position that it is entitled to a new trial on these issues is of little avail.

Two matters remain for disposition in this appeal. First, CPC cross claimed against Skippy, Inc. for a declaratory judgment that CPC's trademark rights in the mark *Skippy* had become incontestable pursuant to 15 U.S.C. § 1115. The district court held for CPC, declaring that CPC's right to use the mark had become incontestable and that "said registration shall be and hereafter evidence of registrant's exclusive right to use the registered trademark . . . ."

At trial Skippy, Inc. attacked CPC's claim to incontestable rights on grounds of fraud in the procurement of those rights. In June of 1933 Rosefield applied for a federal trademark registration for the mark *Skippy* for peanut butter. Skippy, Inc. opposed Rosefield's attempt to register *Skippy* for peanut butter. The Patent Office sustained Skippy, Inc.'s objection to the attempted registration and Rosefield did not appeal rejection of its application. In 1954, as a condition to sale of its business to Best Foods, Rosefield obtained incontestable rights to the mark *Skippy* peanut butter. To obtain these incontestable trademark rights, the president of Rosefield filed an affidavit with the Patent Office stating that there had been no final decision adverse to its rights to register *Skippy*.

Skippy, Inc. claimed that this statement in the affidavit was false since there had been a final decision against the registrability of Rosefield's mark in 1933. The district court held for CPC, finding that the statement in the affidavit was not false. CPC argues that the statutory requirement of no adverse decision to the party's right to register the mark applies only to the federal registration for which the affidavit is being sought (the 1947 registration) and does not include any adverse decisions (the attempted registration in 1933) from other attempts to register the same mark. We are unable to agree with this construction of the statute (15 U.S.C. § 1065). Section 1065 requires that the registrant file an affidavit stating that "there has been no final decision adverse to registrant's . . . right to register the [mark]." Unlike other statements required by § 1065, the requirement that party state there be no adverse decisions has no express time limitation. Absent a specified limitation, we see no reason to impose one. We, therefore, conclude that Rosefield's statement that there had been no final decisions adverse to the registrability of Rosefield's mark was false. Accordingly, that portion of the district court's order granting CPC a declaratory judgment that its rights in the mark *Skippy* had become incontestable must be vacated.

The second matter remaining for disposition is CPC's cross-claim for declaratory judgment that Skippy, Inc. abandoned its trademark rights in the mark *Skippy*. To prove abandonment, a party must show intent to abandon. *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1043–44 (2nd Cir. 1980). Skippy, Inc. submitted evidence showing that it continued to attempt to market the Skippy cartoon character and concept after 1945, that the Board of Directors of Skippy, Inc. met occasionally after 1945, and that Skippy, Inc. reemerged as an active company after Tibbetts became president in 1968. This evidence is sufficient to sustain the district court's finding that Skippy, Inc. did not intend to abandon its trademark.

Except for the district court's declaration that CPC's right to use the mark *Skippy* has become incontestable pursuant to 15 U.S.C. § 1115, the resolution of all issues by the district court is affirmed. The declaratory judgment that CPC's right to the mark *Skippy* has become incontestable is vacated.

AFFIRMED IN PART, VACATED IN PART.

WIDENER, Circuit Judge, concurring and dissenting:

I concur in all of the opinion except certain of those parts regarding the right to a jury trial to which I respectfully dissent.

So far as the opinion may be based on waiver of jury trial, failure to raise the issue timely, or the like, I agree with it.

So far as the opinion relies, however, on failure to grant a jury trial because the issues involved, including fraud (the other issues having been removed), were equitable, I think that the reasoning expressed in *Dairy Queen v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), requires trial by jury. Thus, I would re-parse the case in line with that holding, as consistently as I might with the principles expressed in the majority opinion, vacating, however, for a new trial, such parts of the judgment as depend upon issues which ought to have been tried by jury.