**CPC INTERNATIONAL INC., Plaintiff,**

**v.**

**SKIPPY, INC. and Pineland Peanut Processors, Inc. and Joan Crosby Tibbetts, Defendants.**

**Civ. A. No. 86–0109–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 4, 1986.

W. Mack Webner, Frederick L. Bergert, Nies, Webner, Kurz & Bergert, Arlington, Va., for CPC Intern. Inc.

George H. Ragland, Jr., Ragland & Kawamoto, P.C., Falls Church, Va., for Pineland.

Edward L. Neveleff, Washington, D.C., for Skippy & Tibbetts.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

RICHARD L. WILLIAMS, District Judge.

I. *FINDINGS OF FACT*

A. *General Findings*

1. Plaintiff, CPC International Inc. (hereinafter CPC), is a corporation of the State of Delaware, having its office and place of business in Englewood Cliffs, New Jersey.

2. Defendant, Skippy, Inc. (hereinafter S.I.), is a corporation of the State of Delaware, having its office and place of business at 11900 St. Johnsbury Ct., Reston, Fairfax County, Virginia.

3. Defendant, Pineland Peanut Processors, Inc. (hereinafter Pineland), is a corporation of the State of North Carolina, having its principal place of business at Bladenboro, North Carolina.

4. Defendant, Joan Crosby Tibbetts, (hereinafter Tibbetts), is an individual residing and domiciled at 11900 St. Jonesbury Ct., Reston, Fairfax County, Virginia. De-

fendant Tibbetts is the president of defendant S.I.

### B. *Plaintiff*

1. CPC is a major manufacturer and processor of branded (trademarked), packaged food products sold to consumers, among which brands and products are SKIPPY peanut butter, HELLMAN'S mayonnaise and MAZOLA corn oil.

2. CPC is the owner of a federal trademark registration No. 504,940 for the trademark SKIPPY for peanut butter which registration issued on December 21, 1948. [PX 174] CPC also owns a federal registration No. 1,248,537 for a SKIPPY "creamy peanut butter" label and design, which registration issued August 16, 1983. [PX 175]

3. CPC and its predecessors have sold peanut butter in the United States under the trademark SKIPPY since 1933. *Skippy, Inc. v. CPC International Inc.*, 210 U.S.P.Q. 589, 592–593 (E.D.Va.1980), *aff'd in part, vacated in part*, 674 F.2d 209 (1982), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982).

4. There are no food products for human consumption sold under the brand name or trademark SKIPPY by anyone other than CPC.

5. CPC's sales of SKIPPY peanut butter are, and have been for the last five years, in excess of 150 million dollars annually. [PX 173] This court found, in 1980, that CPC and its predecessors had net sales of SKIPPY peanut butter, exceeding one-and-a-half billion dollars.[1] *Skippy, Inc. v. CPC International Inc., supra*, at 592.

6. CPC's advertising and promotional expenses for its SKIPPY peanut butter are currently in excess of 20 million dollars annually. [PX 173] This court found, in 1980, that CPC and its predecessors had spent "more than one-hundred-five million dollars in advertising and marketing."

*Skippy, Inc. v. CPC International Inc., supra*, at 592.

7. CPC sells its SKIPPY brand peanut butter in the Commonwealth of Virginia and nationally and it has a plant for the manufacture of SKIPPY peanut butter in Portsmouth, Virginia.

8. CPC has, from time-to-time, used and licensed its SKIPPY trademark for use on non-food products which meet CPC's standards of quality. In so doing, it hoped to gain favorable goodwill for the trademark in a variety of product areas.

### C. *Defendants*

1. Skippy, Inc. (hereinafter S.I.) is a family held corporation.

2. S.I.'s place of business is in its president's home in Reston, Virginia.

3. In 1980, S.I. filed a suit against CPC in the Eastern District of Virginia claiming that CPC infringed S.I.'s federal trademark registration No. 1,129,551 for the word SKIPPY for a "publication—namely, a cartoon comic strip" which S.I. had, then, recently been granted. The court held that CPC's use of SKIPPY did not infringe any rights of S.I. The Fourth Circuit Court of Appeals affirmed and the United States Supreme Court denied *certiorari*. *Skippy, Inc. v. CPC International Inc., supra.*

4. Subsequent to the decisions in the 1980 civil litigation, S.I. has attempted to license the word SKIPPY to other companies and, particularly, to other companies in the food business. Until it licensed the defendant Pineland, it had been unsuccessful in its licensing attempts. [Tibbetts Dep.Tr. p. 24]

5. Beginning in May of 1985, Tibbetts contacted Pineland and began to negotiate a license with Pineland relative to a caramel corn and peanut mix product made by Pineland. A license agreement was entered into by the parties, dated September 12, 1985 by S.I., and dated October 4, 1985 by Pineland. [PX 2—PX 14; PX 165]

---

1. The figures relied on by the court covered only the years 1958–1980 and are shown in PX 173.

6. In the license S.I. claimed to be "the owner of the mark SKIPPY, the owner of the fanciful character SKIPPY and the owner of various comic strips involving said character" and granted Pineland the right to use, *inter alia,* "the word mark SKIPPY, the comic strip SKIPPY, the fanciful character SKIPPY" on Pineland's packaging for "caramel corn, caramel corn with peanuts, popcorn and nuts". [PX 165; Pleadings][2]

7. Tibbetts and S.I., working with Pineland and its employees, designed containers for the caramel corn that displayed the word SKIPPY in red letters in a manner virtually identical to the red letter display used by CPC on its SKIPPY peanut butter. [PX 176; PX 166; PX 168]

8. The container came to the attention of CPC in January, 1986, [Fleming Dep.Tr. at 3–4] and CPC immediately filed this suit seeking preliminary and permanent injunctive relief against the defendants for trademark infringement and unfair competition.[3]

9. Tibbetts has, since the 1980 civil litigation, written to various federal agencies and elected officials complaining that CPC has engaged in "racketeering", that it blackmailed her lawyer, and that CPC is engaged in conspiracies against S.I. with various other corporations in the food business. [Tibbetts Dep.Tr. pp. 14, 18–19, 46–48, and 55–56] Tibbetts and S.I. represent to third parties that S.I. is the owner of the rights to SKIPPY for peanut butter and other food products and to SKIPPY for all products generally. [PX 2, 68–71]

10. Despite the results of the 1980 civil litigation, S.I., through Mrs. Tibbetts, continued to demand of CPC that it take a license from S.I. to use the SKIPPY name, and sought a sum of money in the amount of seven and a half million dollars for the license. Tibbetts told CPC that if CPC refused to take a license, S.I. would "take steps to re-enter the food market by selling peanut butter and nuts". [PX 143]

11. Based on this series of events, plaintiff CPC claims trademark infringement, 15 U.S.C. § 1114, and unfair competition, 15 U.S.C. § 1125(a). CPC also seeks relief for common law trademark infringement and common law unfair competition. Restatement of Torts § 711 *et seq.* As relief, CPC requests an injunction (a) precluding S.I. and Tibbetts from continuing to offer to license, offer to sell, distribute, advertise or promote a caramel corn and peanut product or any other food product under the trademark SKIPPY or any mark confusingly similar thereto; and (b) enjoining S.I. and Tibbetts from communicating in any manner with anyone that S.I.'s rights in the trademark SKIPPY include the right to use SKIPPY on peanut butter and food products and, conversely, that CPC has no rights in the SKIPPY trademark. CPC asks that its injunctive relief extend to prohibiting S.I. and Tibbetts from threatening the shareholders, management, employees, attorneys or agents of CPC with adverse publicity, lawsuits or criminal complaints due solely to CPC's use of its SKIPPY trademark and/or by CPC's enforcements of its rights in the SKIPPY trademark. [Plf.'s Restricted Prayers for Relief]

## II. *CONCLUSIONS OF LAW*

### A. *Jurisdiction and Venue*

Jurisdiction in this case is based upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338. The matter in controversy exceeds the sum or value of ten thousand dollars ($10,000.00), exclusive of interest and costs, and there is diversity of citizenship of the parties. Venue is proper in this court under 28 U.S.C. § 1391.

---

**2.** The defendant Pineland consented to the entry of a permanent injunction against its continued use of, *inter alia,* containers, labels or packages bearing the word SKIPPY or any word confusingly similar to SKIPPY for food products. The Consent Order was entered April 29, 1986.

**3.** A third count for the intentional interference with property rights alleged against defendant Tibbetts personally and seeking compensatory and punitive damages from defendant Tibbetts was withdrawn before trial.

### B. *Trademark Infringement*

In 1980, this court presided over S.I.'s suit against CPC for trademark infringement, and its rulings in that case form the backdrop for CPC's present suit against S.I. In the 1980 suit, this court found that S.I. was the prior user of the SKIPPY mark, that it had not abandoned its trademark rights in this mark, but that it had never used the mark in connection with peanut butter. Instead, the first to adopt the mark as a name for peanut butter was Rosefield, CPC's predecessor, in 1933. The court found "little likelihood of confusion" between SKIPPY the cartoon character, and SKIPPY brand peanut butter,[4] and, accordingly, denied S.I. equitable relief.

■ The result of the 1980 litigation was to affirm CPC's right to use the SKIPPY mark in connection with the sale of peanut butter. The question now facing the court is to what extent CPC's trademark rights extend beyond the single product, peanut butter.[5]

■ The resolution of this question depends upon whether or not there is "a likelihood of confusion". 15 U.S.C. § 1114(1). Whether or not there is "likelihood of confusion" is a question of fact, *Pizzeria Uno Corporation v. Temple,* 747 F.2d 1522, 1526 (4th Cir.1984), and, in analyzing this question, the following seven factors should be considered:

(a) the strength or distinctiveness of the [plaintiff's] mark;

(b) the similarity of the two [parties'] marks;

---

**4.** The court also ruled that CPC's trademark rights in the SKIPPY mark had become incontestable pursuant to 15 U.S.C. § 1115, but this holding was vacated on appeal to the Fourth Circuit. Because of the Fourth Circuit's ruling, CPC's registration of the SKIPPY mark is not "conclusive evidence" of CPC's "exclusive right to use the registered mark." 15 U.S.C. § 1115(b). However, CPC's certificates of registration Nos. 504,940 and 1,248,537 are still *prima facie* evidence of CPC's exclusive right to use the SKIPPY mark in commerce on the goods specified in the registrations, *i.e.,* peanut butter. 15 U.S.C. § 1115(a). Under Section 1115(a), a trademark registration creates a presumption of exclusivity that "shift[s] the burden of proof from the plaintiff, who in a common law infringement action would have [had] to establish his right to exclusive use, to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such [exclusive] use." *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1529 (4th Cir.1984), quoting *Keebler Corp. v. Rovira Biscuit Corp.,* 624 F.2d 366, 373 (1st Cir.1980).

The defendants have presented no evidence in either suit to rebut this presumption of exclusivity.

**5.** The defendants' repeated reliance on their "priority" is misguided. The most fundamental principle of trademark law is that trademark rights derive from the *use* of a mark in connection with a good or product; they are not rights "in gross 'or at large, like a statutory copyright or a patent for an invention."

"[T]he right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trade and to protect his good will against the sale of another's product as his, and it is not the subject of property except in connection with an existing business." *United Drug Co. v. Rectanus Co.,* 248 U.S. 90, 97, 39 S.Ct. 48, 51, 63 L.Ed. 141 (1918) (citations omitted). In other words, a trademark is "property" only in the sense that it is a symbol of good will. It "is merely one of the visible means by which the good will is identified, bought and sold, and known to the public." *Coca-Cola Bottling Co. v. Coca-Cola Co.,* 269 F. 796 (D.C.Del.1920).

From this basic principle stems the limits of trademark protection. The defendants' prior use of the SKIPPY mark does not entitle them to claim the name SKIPPY as their own for all time and all purposes. They are entitled to protection only to the extent necessary to protect the good will created by the cartoon and related products. The ambits of this protection are encapsulated in the following test, uniformly applied by the courts: An owner of a trademark is entitled to an injunction when there is a likelihood of confusion as to the source, connection or sponsorship of goods. 15 U.S.C. § 1114(1). *Pizzeria Uno Corp. v. Temple,* 747 F.2d at 1527. If consumers are likely to be confused, an injunction will issue. If not, no relief is afforded.

In 1980, this court found that there was little likelihood of confusion in CPC's using the SKIPPY name in marketing peanut butter. S.I.'s trademark rights did not extend into the peanut butter market. At this point, CPC has invested heavily in developing good will in relation to its peanut butter, and it has succeeded in achieving extensive name recognition for its product in the market. CPC thus now deserves to have the good will that it developed protected. *Cf. Mile High Upholstery v. General Tire and Rubber Co.,* 221 U.S.P.Q. 217 (N.D.Ill.1983).

(c) the similarity of the goods/services [of the parties] a mark identifies;

(d) the similarity of the facilities [trade channels] the two parties use in their businesses;

(e) the similarity of the advertising used by the two parties;

(f) the defendant's intent;

(g) actual confusion.

*Id.* Not all of the factors are of equal relevancy or weight in each case. *Pizzeria Uno Corporation v. Temple, supra,* at 1527.

■ Based on the factors above, defendants' use of the mark SKIPPY on caramel corn or, in fact, on any other food product, constitutes an act of trademark infringement. The court will review the more important of these factors just briefly:

(a) *The Strength of CPC's Mark.* CPC's long, extensive and exclusive use of the mark SKIPPY on food products has caused the word SKIPPY to have secondary meaning as a trademark of CPC when it is used in connection with any food products, particularly caramel corn. The trademark SKIPPY has become a strong and distinctive mark, one which indicates a product originating with CPC, or, to those less informed, a product originating with the company that markets SKIPPY peanut butter, whatever company that may be. Because of CPC's extensive sales and advertising, consumers in today's world will automatically connect any food product bearing the mark 'SKIPPY' with SKIPPY peanut butter and the company that manufactures it.

(b) *Similarity of the Marks.* The mark licensed by S.I. for use on caramel corn and the SKIPPY mark of CPC are identical. Moreover, because it is a single unitary word, any prominent use of the word 'SKIPPY' will necessarily be similar to the trademark SKIPPY, regardless of the surrounding tradedress.

(c) *Similarity of the Goods.* Pineland's caramel corn and peanut product and CPC's SKIPPY peanut butter are similar food products for human consumption. Both are snack foods and both contain peanuts. Thus, the similarity of the particular goods in question is more than sufficiently close to create a likelihood of confusion. More importantly, because of CPC's extensive use of the mark SKIPPY in the food area, any use of that trademark in the food area by another entity would necessarily cause confusion.

(d) *Defendants' Intent.* The defendants' intent throughout has been to obtain food product licensees who would use the SKIPPY mark in the same format that CPC has used for many years. They intended to reclaim the mark as their own and their acts were directed specifically at CPC. Although they abjure any intent to cause confusion, their acts could not fail to have any other effect.

(e) *Actual Confusion.* Because S.I. has been, generally, unsuccessful in licensing the mark SKIPPY in the food area and because CPC has moved rapidly in this particular instance to enjoin the use of SKIPPY on the caramel corn and peanut product of Pineland, there have been no instances of actual confusion made known to CPC.

In summary, plaintiff's mark is relatively strong, which means that it enjoys extensive protection against its use on all related goods. These include products that are not in direct competition, and, in this case, include all food products.[6] *AMP Inc. v. Foy,* 540 F.2d 1181, 1183 (4th Cir.1976); *Communications Satellite Corp. v. Comcet, Inc.,* 429 F.2d 1245, 1251 (4th Cir.1970).

### C. *Unfair Competition*

■ A finding of likelihood of confusion supports in and of itself the claims for unfair competition and common law trademark infringement. *Food Fair Stores, Inc. v. Lakeland Grocery Corp.,* 301 F.2d 156, 160 (4th Cir.1962). However, in addition, the court finds that it is unfair compe-

---

**6.** The court need not determine, for the purposes of this case, the full ambit of CPC's trademark protection. However, it appears likely that CPC would be entitled as well to the exclusive use of the "SKIPPY" mark in connection with the sale of children's products.

tition for S.I. and Tibbetts to make false claims about S.I.'s rights in SKIPPY. S.I.'s and Tibbetts' claim of ownership of SKIPPY for food products and peanut butter are false claims prohibited by law. Lanham Act § 43(a), 15 U.S.C. § 1125(a).

D. *Remedies*

The Lanham Act, Section 34, 15 U.S.C. § 1116, provides that:

> The several courts vested with jurisdiction of civil actions arising under this Act shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office.

Accordingly, CPC is entitled to a permanent injunction to prevent S.I. and/or Tibbetts from licensing or attempting to license the trademark SKIPPY for food products and to prevent Tibbetts or any other officers, agents, employees, directors, or others in privity with S.I. from representing to any third parties that CPC does not have rights to the trademark SKIPPY for food products. An order to this effect will issue.