**SWEETWATER BREWING COMPANY, LLC,**
Plaintiff,

v.

**GREAT AMERICAN RESTAURANTS, INC. d/b/a Sweetwater Tavern, et al., Defendants.**

**No. CIV.A. 02–802–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 16, 2003.

Tameka Meshaun Coller, Esquire, Troutman Sanders, Richmond, VA, David H. Dickieson, Esquire, Buchanana Ingersool, Washington, DC, Everett W. Gee, III, Esquire, Keysville, VA, for Plaintiff.

John H. Korns, Esquire, Buchanan Ingersoll, Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

LEE, District Judge.

THIS Matter is before the Court on the parties' cross motions for summary judgment. This is a trademark infringement action instituted by Plaintiff regarding Defendants Great American Restaurant

Inc.'s, *et al.*, ("GAR" or "Defendants") use of a mark entitled "Sweetwater Tavern," in connection with its three Sweetwater Tavern restaurants and the sale of restaurant services, and on beer brewed by Old Dominion Brewing Company ("old Dominion"). Plaintiff specifically challenges Defendants' use of the mark for all the beers that Defendants brew and sell from their menu at the restaurants, beers sold at the restaurant in special containers, called growlers, for customers to take off-site, beers sold in kegs that are then sold to Defendants' affiliated restaurants, and bottled beer sold in retail stores in regions of close proximity to Defendants' restaurants.

The issue before the Court is whether the Court should grant either party's motion for summary judgment on Plaintiff's trademark infringement and unfair competition claims when (1) Plaintiff owns the registered trademark "Sweetwater Brewing Company" in connection with the sale of beer, specifically a microbrew or craft beer and related promotional items; and (2) Defendants use the mark "Sweetwater Tavern" on their restaurants/taverns/brewpubs, and "Sweetwater Light" on their craft beer and related promotional items. Upon review of the submissions and arguments of the parties, this Court holds that Plaintiff Sweetwater Brewing Company is entitled to judgment as a matter of law on its trademark infringement claim because it has a protectable interest in the Mark and it has demonstrated that a likelihood of confusion exists by Defendant's use of the mark.

## I.  BACKGROUND

SBC instituted the present litigation on June 5, 2002, to enforce its Trademark after it discovered Defendant's use of the name "Sweetwater Tavern" for three area restaurants and on beer sold in the restaurant and through Northern Virginia wholesalers.

Plaintiff Sweetwater Brewing Company, LLC ("SBC"), is a limited liability company that is based in Atlanta, Georgia. SBC operates as a microbrewery, which makes and sells bottled and keg beer, under the name "Sweetwater Brewing Company." SBC also uses the Mark on its logo, "advertising materials, t-shirts, glasses, hats, bar items, and other related products, some of which are offered for sale." (Pl.'s Statement of Material Uncontested Facts Supp. Mot. Partial Summ. J. at 2) (hereinafter "Pl.'s Statement of Facts"). According to Plaintiff, the Mark "displays 'Sweetwater' prominently, with 'Brewing Company' used in much smaller letters, on a scroll. SBC uses a trout jumping through its logo, and on occasion fishermen catching a trout in a stream." (*Id.*)

On July 6, 1999, the Patent and Trademark Office ("PTO") awarded SBC a trademark covering the Sweetwater Brewing Company trademark[1]. The PTO awarded the trademark based on SBC's previously filed "intent to use" application, which was submitted on July 30, 1996. Sweetwater's registration rights regarding the Mark pertain to "malt beverages, namely, beer, ale, stout, lager and pilsner." (*Id.* at 3.) Plaintiff, however, claims continuous use of the mark since November 1995.

SBC "brewed its first beer for sale in January 1997 and sold its first beer on February 17, 1997," in Atlanta, Georgia. (*Id.* at 4.) SBC began selling beer in Virginia in February 2001. (Defs.' Br. Supp. Mot. Summ. J. at 1.) SBC states that "from the beginning" its "marketing plan was to target the Southeast...." (Pl.'s Statement of Undisputed Facts at 4.) Ac-

---

**1.**  The United States Trademark Registration    Number is 2,259,736.

cording to SBC, the Southeast "includes Virginia and the Washington, D.C. area." (*Id.*)(quoting Bensch Decl., ¶ 6.) SBC maintains that it sells its beer in the following areas: North Carolina, Florida, Alabama, Virginia, Illinois, South Carolina, "and to internet beer clubs that distribute beer nationally." (*Id.*) SBC also contends that the majority of its estimated $2 million revenue for this year will come "from the sale of the beer under the Mark." (*Id.* at 6.)

Defendant GAR is a Virginia corporation that operates a chain of seven restaurants and one bakery in northern Virginia, and the surrounding Washington, D.C. metropolitan area. "GAR oversees the management of three brewpub restaurants under" the mark "SWEETWATER TAVERN," and GAR also oversees the "manufacture, sale and marketing of beer under this mark." (Defs'. Br. Supp. Mot. Summ. J. at 1.) Defendants acknowledge using the mark "for beer brewed by Old Dominion Brewing Company ("Old Dominion") . . . which is sold . . . (a) in kegs to Defendants' affiliated restaurants (Carlyle Grand Café, Mike's American Grill, Artie's and Silverado); and (b) in bottles to retail stores in the proximity of Defendants' restaurants." (*Id.*)

Defendant's first tavern, Sweetwater Tavern, opened in September 1996. "None of the Taverns, however, have directly sold bottled or keg beer for consumption outside of the restaurants" and "[t]he only Tavern beer with 'Sweetwater' as its name is Sweetwater Light." (Pl.'s Statement of Facts at 7) (quoting Norton Decl., ¶ 71). Sweetwater Light, Defendant's beer, was first sold in one of Defendants' taverns on November 27, 1996. (*Id.*)

Defendants assert that neither party knew of the other's existence until approximately October 1997, when both companies attended the Great American Beer Festival in Colorado. However, according to GAR, "SBC did not complain about Defendants' use of their [SBC's] mark until early 2000." (*Id.*)

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if it is shown that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.* The moving party is entitled to judgment as a matter of law unless a fairminded jury could return a verdict for the nonmoving party on the evidence presented. *See id.* at 247–48, 106 S.Ct. 2505.

## III. ANALYSIS

### A. Federal Trademark Infringement and Unfair Competition

█ The Court notes initially that the analysis of Plaintiff's federal trademark infringement claim also applies to Plaintiff's common law unfair competition claim

under Virginia law. *See Lone Star Steak-house & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 n. 10 (4th Cir.1995) (acknowledging that the test for trademark infringement and unfair competition are essentially the same).

SBC asserts a claim of trademark infringement under the Lanham Act and under Virginia common law. The Supreme Court held in 1985, that the "Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.* 469 U.S. 189, 198, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

■ In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark infringement and unfair competition, the plaintiff "must prove that it has a valid, protectable trademark and that the defendant is infringing its mark by creating confusion, or by a likelihood thereof, by causing mistake, or by deceiving as to the attributes of its mark." *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir.2001). Additionally, the plaintiff need not demonstrate that the defendant is using an identical mark to succeed on a trademark infringement claim; the marks need only be similar. *See Lone Star*, 43 F.3d at 931–32 (holding that plaintiff need only show defendant's use of a "colorable imitation of the trademark").

### 1. Protectable Mark

■ In order to demonstrate a valid and protectable trademark under the Lanham Act, the plaintiff must show conclusive evidence of (1) the validity of the registered mark; (2) the registration and ownership of the mark; and (3) the registrant's exclusive right to use the mark in commerce.

*See* 15 U.S.C. § 1114(1); *Lone Star* 43 F.3d at 930. Plaintiff in the instant case demonstrates that it has a valid and protectable trademark under the Lanham act, because it provides conclusive evidence of all three elements.

First, Plaintiff has presented conclusive evidence of the validity of its registered mark, "Sweetwater Brewing Company" because it has used the mark on its beer and related promotional products "in such a manner that its nature and function are readily apparent and recognizable without extended analysis or research and certainly without legal opinion." *MicroStrategy Inc. v. Motorola, Inc.* 245 F.3d 335, 342 (4th Cir.2001). As previously stated, Plaintiff SBC uses the mark by displaying " 'Sweetwater' " prominently, with 'Brewing Company' in much smaller letters on a scroll. SBC uses a trout jumping through its logo, and on occasion fisherman catching a trout in a stream." (Pl.'s Statement of Facts at 2.)

Second, Plaintiff has produced conclusive evidence of the validity of the registered mark. The PTO awarded SBC the "Sweetwater Brewing Company" trademark on July 6, 1999, based on Plaintiff's "intent to use" application that was filed on July 30, 1996. (*Id.* at 3.) The U.S. Trademark Registration Number is 2,259,736. (*Id.*) The rights associated with the Mark pertain to "malt beverages, namely, beer, ale, stout, lager and pilsner." (*Id.*)

Third, Plaintiff has proffered conclusive evidence of its exclusive right to use the mark in commerce because Plaintiff received its certificate of registration from the PTO for the Mark. The Fourth Circuit recently held that

It is well established that when the PTO issues a certificate of registration, that registration provides the registrant with *prima facie* evidence of 1) the validity of

the mark and its registration, 2) the registrant's ownership, and 3) the registrant's "exclusive right" to use the mark on or in connection with the goods and services specified in the certificate of registration.

*U.S. Search, LLC v. U.S. Search.com Inc.,* 300 F.3d 517, 524 (4th Cir.2002) (quoting *America Online, Inc. v. AT & T Corp.,* 243 F.3d 812, 816 (4th Cir.2001)).

Accordingly, Plaintiff had demonstrated that it has a protectable mark under the Lanham Act.

Therefore, Plaintiff SBC has established that it has a valid and protectable mark.

### 2. Likelihood of Confusion

■ When determining the likelihood of confusion, a court should consider the following non-exclusive factors: (1) the strength or distinctiveness of the plaintiff's mark; (2) the similarity of the two parties' marks; (3) the similarity of the goods and services the marks identified; (4) the similarity of the facilities the two parties use in their business; (5) the similarity of advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion. *See Petro Stopping Centers, L.P. v. James River Petroleum, Inc.,* 130 F.3d 88, 91 (4th Cir.1997) (citing *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984)). However, "[n]ot all of the factors are of equal relevancy or weight in each case." *CPC Int'l Inc. v. Skippy, Inc.,* 651 F.Supp. 62, 67 (E.D.Va.1986) (quoting *Pizzeria Uno,* 747 F.2d at 1527). In fact, when the plaintiff's mark is strong and defendant's use of a similar mark has caused actual confusion, the inquiry ends almost as soon as it begins. *See Sara Lee Corp. v. Kayser–Roth Corp.,* 81 F.3d 455, 467 (4th Cir.1996). Moreover, "actionable confusion includes confusion as to affiliation, connection or sponsorship" or the "source" of the goods. 2 J. Thomas McCar-

thy, McCarthy on Trademarks and Unfair Competition §§ 23:5, 23:8 (hereinafter "McCarthy"); *see also* Lanham Act § 43(a)(1)(A). Plaintiff need not demonstrate that a customer was confused when buying Company A's product thinking he was buying Company B's product, which is not possible in this case yet, because the parties do not currently sell their products in the same region. Moreover, when goods are in direct competition, "the degree of similarity required to prove a likelihood of confusion is less than in the case of dissimilar products." *Sara Lee,* 81 F.3d at 465–66; 3 McCarthy § 23:20.1.

■ Based upon the above factors, Defendants' use of the mark "Sweetwater Tavern" and "Sweetwater" in connection with several of its beer products, constitutes an act of trademark infringement. The Court will review the more important of these factors briefly:

(1) *Strength of Plaintiff SBC's Mark.* SBC submitted its intent to use application to the PTO for the Mark "Sweetwater Brewing Company" on July 30, 1996, and it began selling its beer products with the mark affixed to the bottles and packages on February 17, 1997. Plaintiff has used the mark extensively since that time in connection with its beers. The trademark Sweetwater Brewing Company has become a strong and distinctive mark, one that indicates the source of Plaintiff's beers.

(2) *Similarity of the Marks.* In considering the similarity of competing marks, courts employ an "anti-dissection" rule that requires consideration of the marks as a whole, rather than the component parts of the marks. 2 McCarthy § 11:27. Moreover, it is important to give greater weight to the "dominant" parts of a composite mark. 3 McCarthy § 23:42. According to the above test, the Court holds that the similarity of the marks is estab-

lished. First, "Sweetwater" is clearly the dominant part of the mark. Second, Both parties prominently display the word "Sweetwater" separate and apart from all other words. "Moreover, because it is a single unitary word [in contention], any prominent use of the word ["Sweetwater"] will necessarily be similar to the trademark [Sweetwater Brewing Company], regardless of the surrounding tradedress." *Sara Lee,* 81 F.3d at 465–66. Thus, Plaintiff has established the requisite similarity of the marks.

(3) *Similarity of the Goods.* The parties each use the mark in connection with the sale of microbrewery beers. Therefore, "the similarity of the particular goods in question is more than sufficiently close to create a likelihood of confusion." *CPC Int'l,* 651 F.Supp. at 67.

(4) *Defendant's Intent.* Although intent is not required to prevail on a federal trademark infringement claim, 3 McCarthy § 23:107, Defendants' intent throughout has been to establish recognition, association, and good will of its products with the Sweetwater mark. It is not arguable that Defendants intended to claim Plaintiff's mark as their own, because the evidence is that GAR was not aware of Plaintiff SBC's use of the mark when it began to use the mark for its restaurant and microbrewery businesses.

(5) *Actual Confusion.* Plaintiff asserts that it has evidence of actual confusion. In particular, Plaintiff directs the Court to both parties' attendance at the Great American Beer Festival ("GABF"), every year between 1997–2002. At the 1998 Colorado GABF, Defendants GAR won a medal, but SBC was accidentally listed as the beer's brewer. Moreover, in a book on smoked beers, the "text of the book correctly identifies [Defendants] Sweetwater Tavern and all relative information, however, an appendix lists [Defendant] Sweetwater Tavern as a producer of the beer but wrongly lists [Plaintiff] SBC's brewer, address and telephone number." (Defs.' Br. Supp. Summ. J. at 24.) One circuit has held that when sophisticated professionals are confused, this "is perhaps most probative" on the issue of actual confusion. *Morningside Group Ltd. v. Morningside Capital Group., L.L.C.* 182 F.3d 133, 142–43 (2d Cir.1999). Accordingly, Plaintiff has presented ample evidence of actual confusion.

In summary, the Court holds that Plaintiff's mark is relatively strong, "which means that it enjoys extensive protection against its use on all related goods." *CPC Int'l,* 651 F.Supp. at 67 (quoting *AMP Inc. v. Foy,* 540 F.2d 1181, 1183 (4th Cir.1976)).

**B. Common Law Trademark Infringement**

Plaintiff must also demonstrate a protectable interest in its mark under Virginia common law. In order to demonstrate a protectable interest under Virginia common law, the business plaintiff must show that its use of the trademark serves a dual function of designating the business' source of goods or services, and asserting good will for the business which is distinct from another business. *See generally CPC Int'l,* 651 F.Supp. at 66. However, the Court need not tarry long on this claim, for a "finding of likelihood of confusion supports in and of itself the claims for unfair competition **and** common law trademark infringement." *Id.* at 67 (emphasis added) (quoting *Food Fair Stores, Inc. v. Lakeland Grocery Corp.,* 301 F.2d 156, 159 (4th Cir.1962)). Accordingly, because the Court found a likelihood of confusion, under the Lanham Act, between the parties' respective marks, Plaintiff is, likewise, entitled to summary judgment on the instant claim of common law trademark infringement.

## C. Defendant's Cross–Motion for Summary Judgment

█ Defendants move the Court for summary judgment, asserting that they are the senior user of the mark "Sweetwater Tavern" and "Sweetwater" in connection with several of Defendants' beer products. For the reasons that follow, the Court holds that Defendants are not entitled to summary judgment on Plaintiff's claims, because Defendants are not the senior users of the mark.

The pivotal date in this case is July 30, 1996, when Plaintiff filed its intent to use application with the PTO for use of the Mark "Sweetwater Brewing Company." Defendants assert that they established use of the mark prior to Plaintiff's application filing date. The basis of Defendants' prior use theory is its pre-opening promotional activities, "which were intended to and did create in their target customers a recognition of their mark as being associated with their soon-to-be available brewpub restaurant services...." (Defs.' Br. Supp. Summ. J. at 3.) Defendants argue that they adopted the mark Sweetwater Tavern in 1995, and that they began developing the Sweetwater Tavern logo in 1996, by issuing press releases and displaying a large sign with the logo at the construction site. (Id. at 3–4.)

Any "party who alleges a use prior to an opponent's constructive use date must prove its priority under the traditional rules of common law trademark priority." 2 McCarthy § 16:2. The traditional trademark priority rule necessary to establish trademark protection requires use of the mark "in the sale of goods." 2 McCarthy § 16:4. "Use," as relates to goods, requires the mark to be "placed in any manner on the goods or their containers or the dis-

plays associated therewith or on the tags or labels affixed thereto...." 15 U.S.C. § 1127; see Emergency One, Inc. v. American FireEagle, Ltd. 228 F.3d 531, 536 (4th Cir.2000).

The Fourth Circuit held in MicroStrategy that use of a mark on press releases, brochures, sales presentations, newspaper articles, and the like, was not relevant trademark use tying a mark to a good or service. See MicroStrategy, 245 F.3d at 341–42; McDonald's Corp. v. Burger King Corp., 107 F.Supp.2d 787, 789 (E.D.Mich. 2000) (citing Lucent Info. Mgt., Inc. v. Lucent Techs., Inc. 986 F.Supp. 253 (D.Del.1997), aff'd, 186 F.3d 311 (3d Cir. 1999)). Thus, under the traditional trademark infringement rule, Defendants' attempts to establish "use" of the mark through promotional activities are without merit. Defendants did not use the mark in the sale of goods prior to July 30, 1996, the date when Plaintiff submitted its intent to use application to the PTO. In fact, Defendants' first tavern did not open until September 18, 1996, almost two months after Plaintiff filed its intent to use application with the PTO, and Defendants' first beer was not sold until after the tavern's opening. Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claim based on the theory of prior use.

## D. Defendants' Counterclaim to Cancel Plaintiff's Mark

Because the Court has already determined that Plaintiff SBC is the exclusive owner of the registered mark "Sweetwater Brewing Company," and that Plaintiff used the mark in commerce prior to Defendants' use of its mark, Defendants are not entitled to cancellation of Plaintiff's mark.[2]

---

2. A defendant in a trademark infringement case "may counterclaim for cancellation of

[plaintiff's] registration." 2 McCarthy § 30:109. The party requesting cancellation

Furthermore, allowing cancellation of Plaintiff's mark and granting Defendants permission to use its mark would cause confusion in the market place. Defendants are not entitled to such a remedy because Defendants were not senior users of the mark, and any rights they have to Sweetwater are subordinate to Plaintiff's rights.

Accordingly, Defendants' Counterclaim to Cancel Plaintiff's Registered Mark is Denied.

## IV. CONCLUSION

For the reasons previously stated, Plaintiff is entitled to summary judgment on its liability trademark infringement claims, because there is no dispute as to Plaintiff's initial of use of the Mark in commerce. Furthermore, Plaintiff demonstrated that if Defendants were allowed to use their similar mark, confusion as to the source of the goods is likely to occur. Accordingly, the Court hereby

ORDERS that Plaintiff's Motion for Summary Judgment on the liability aspects of Plaintiff's Amended Complaint is GRANTED;

ORDERS that Defendants' Motion for Summary Judgment is DENIED;

ORDERS that Defendants' Counterclaim to Cancel Plaintiff's Registered Mark is DENIED;

Defendants are ENJOINED from the following:

Manufacturing, distributing, advertising, promoting, offering for sale or selling beer or related products under the SWEET-WATER name or mark or any other designation, trademark, or service mark, which so resembles the SWEETWATER name and mark as to likely cause confusion, deception, or mistake, including, but not limited to, Sweetwater Light;

Manufacturing, distributing, advertising, promoting, offering for sale or selling beer or related products under the slogan "Don't Float the Mainstream" or mark or any other designation, trademark or service mark, which so resembles the slogan as to likely cause confusion, deception or mistake, including, but not limited to, "Always Drink Upstream from the Herd!";

Otherwise using the Mark in any unlawful or unfair manner;

Further damaging Plaintiff Sweetwater's goodwill, and/or otherwise competing unfairly with Sweetwater in connection with the sale of Sweetwater Light Beer;

Defendant GAR, et al., are ORDERED to re-label, within thirty (30) days of the date of entry, any Sweetwater Light beer products and all products and other materials in its possession, custody, or control, including but not limited to, signs, packages, forms, labels, advertisements, business cards, letterheads, boxes or receptacles, and/or other representations and

---

bears the burden "of overcoming the evidentiary effect of a federal registration." *Id.* The Fourth Circuit held that "a federal court acting under its Lanham Act § 37 cancellation powers is limited to the grounds set out in Lanham Act § 14." *Id.* § 30:112. (quoting *Shakespeare Co. v. Silstar Corp. of Am.,* 9 F.3d 1091 (4th Cir.1993)) (holding that without demonstrating likelihood of confusion, the case for cancellation must be dismissed).

One of the most common grounds for cancellation is Lanham Act § 2(d); the "petitioner has prior use of a mark . . . that is confus-

ingly similar to the registrant's mark. [T]he test under § 2(d) is one of likelihood of confusion. This test is, of course, identical to that employed in trademark infringement litigation." *Id.* 2 McCarthy § 20:53. Defendants assert their right to cancel Plaintiff's registered mark because Defendants' "use of their mark 'Sweetwater Tavern' precedes the actual use and the intended use filing date of SBC's application for registration." (Defs.'s Answer to Am. Compl., Affirm Defenses and Countercl. at 7 ¶ 6.)

means for reproducing the same, that make reference to or depict the SWEET-WATER Light Beer name and mark;

Defendant GAR, *et al.* may continue to use the name Sweetwater Tavern for its restaurant and related businesses in trademarks and logos;

Defendant GAR, *et al.* are enjoined from using the term Sweetwater Light in connection with the sale of beer products;

The Court will convene a hearing to determine the issue of damages and Defendants are required to account for and pay over to Plaintiff Sweetwater Brewing Company all gains, profits, and advantages derived by them from the sale of its beer product Sweetwater Light, constituting trademark infringement, dilution, unfair competition, and unfair practices described herein, as shall be determined at the hearing;

Plaintiff is required to submit to the Court and to the Defendants, its request for attorney's fees, along with supporting evidence, three weeks prior to the hearing;

At the hearing the Court will consider evidence and review submissions on the issue of awarding reasonable attorney's fees, as provided by 15 U.S.C. § 1117(a), and other applicable federal or state law;

Also at the hearing, Plaintiff shall be required to prove, under 15 U.S.C. § 1117(a), Defendants' sales, resulting from Defendants' use of Plaintiff's trademark, and Defendants bear the burden of proving any proper costs or deductions from gross revenues to determine profits, *i.e.,* Defendants must prove that their infringement had no cash value in sales; otherwise, the profits made on the sales of goods bearing the infringing mark belong to the trademark's owner;

Defendants are required to pay an award of treble damages as provided by 15 U.S.C. § 1117 and other applicable law;

Defendants are directed to file with this Court and serve upon counsel for Plaintiff, within thirty (30) days of date of entry, a written report under oath, setting forth in detail the manner in which Defendants have complied with this Order.

The Clerk is directed to send copies to counsel.