**NABISCO BRANDS, INC., and Planters Lifesavers Co., Plaintiffs,**

v.

**CONUSA CORPORATION and General de Confiteria, S.A., Defendants.**

**Civ. No. C–89–154–WS.**

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

April 14, 1989.

W. Andrew Copenhaver, Hada V. Haulsee, James K. Phillips, David A. Shirlen, Winston–Salem, N.C., Marie V. Driscoll, New York City, for plaintiffs.

Bynum M. Hunter, William Sam Byassee, Greensboro, N.C., Edward M. Prince, Richard L. Kirkpatrick, Washington, D.C., Curtis Carlson, Miami, Fla., for defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This matter is before the court on Plaintiffs' motion for a preliminary injunction against Defendants, whom Plaintiffs allege have engaged in acts constituting violations of federal trademark rights under 15 U.S.C. §§ 1114 and 1125, common law trademark rights, the North Carolina Unfair Trade Practices Act, N.C.Gen.Stat. § 75–1.1, and the common law regarding unfair competition. The dispute centers on Defendant General de Confiteria, S.A.'s ("Confiteria") manufacture and Defendant Conusa Corporation's ("Conusa") marketing in the United States of a hard roll candy which Plaintiffs claim is virtually identical in appearance to its Lifesavers candy. While it is Plaintiffs' position that there is a strong likelihood that they will succeed on the merits of their claims and that continued manufacture and marketing of Defendants' product pending trial would cause irreparable harm, Defendants' primary contention is that Plaintiffs' delay in

filing suit argues strongly against irreparable harm and that complex issues of law and fact prevent a conclusion that there is a likelihood that Plaintiffs will succeed on the merits.

On March 15, 1989, this court held a hearing on Plaintiffs' motion. All parties were represented by counsel and the court had before it the briefs of the parties. In addition, various affidavits were submitted, including those of Defendant Conusa's executive vice-president and of managerial and directorial personnel employed by Plaintiffs. In addition, several exhibits were also submitted.

It is undisputed that Plaintiffs' Lifesavers candy is the best-selling candy in history and that its distinctive shape has been in continuous use for over seventy-five years. Plaintiffs currently have registered trademarks in the ring configuration with the raised letters "LIFESAVERS" as well as the configuration *per se*, a depiction of two concentric circles and the slogan "The Candy with the Hole." [1]

From the beginning of the manufacture of Lifesavers, advertising promoting the product has emphasized its distinctive shape and hole in the middle. For example, slogans have referred to the product as "Hole Lotta Fresh" and "A Hole Lotta Fun" and have emphasized that "If it hasn't a Hole—it isn't a Lifesaver." In addition, packaging for various flavors of the Lifesavers candy, such as wintergreen, peppermint, and cinnamon, prominently displays an enlarged "O" depicting the ring configuration of the candy.

Defendant Confiteria, a Spanish corporation, is the leading candy and gum producer in Spain and distributes its products throughout the world. Beginning in 1979, Confiteria produced candy in an annular form and in 1984 Confiteria and its parent formed Conusa, a Florida corporation, to distribute Confiteria products in the United States. The annular candy at dispute in this case was distributed in the United States since at least as early as 1984 and was initially marketed under the brand name "Chimos". However, due to a Finnish company's ownership of an unregistered mark "Chymos", Conusa adopted the mark "Circos" for its candy in 1988.[2] A comparison of Defendants' fruit-flavored Circos alongside those of Lifesavers shows that the candies are of virtually identical color, size, and configuration, and that both have raised lettering, with Defendants' candy bearing the name "Barca", the nickname of the Barcelona, Spain, soccer club.

Plaintiffs apparently first became aware of Defendants' manufacture of Circos in 1984, when an affiliate of Confiteria began distributing Circos on a limited basis in Puerto Rico. Plaintiffs objected to this distribution, and in November of 1984 Plaintiffs' attorney filed an opposition to Defendants' registration of its Circos label. Eventually, however, the matter was settled. Defendant Conusa's executive vice-president claims that Plaintiffs agreed to withdraw opposition on the condition that Confiteria's affiliate agree to seek no costs, interest, or attorney fees. However, Plaintiffs claim that their withdrawal was based upon Defendants' representations that the foray into Puerto Rico had been only to test their product and that they did not anticipate any future endeavor since results had not been positive. In support of their contention, Plaintiffs have filed a letter from Confiteria's Spanish counsel relating such representations.

Following the resolution of the Puerto Rican dispute, however, Defendants did not abandon their efforts to market Circos in the United States. On the contrary, they displayed the candy at National Confectionery Wholesaler Association meetings as

---

**1.** While the ring configuration with letters, the concentric circles, and the slogan are registered with the Patent and Trademark Office on its Principal Register, the ring configuration *per se* is registered only on its Supplemental Register. The significance of this is that, as to the marks on the Principal Register, Plaintiffs need show only likelihood of confusion to establish infringement (absent, of course, any defenses Defendants could successfully raise). Regarding marks on the Supplemental Register, however, Plaintiffs must also show that such a mark has acquired "secondary meaning." *See infra* n. 3.

**2.** Hereinafter Defendants' candy will be referred to as "Circos."

well as National Association of Convenience Stores conventions. Defendants claim that Plaintiffs were present at these shows and were even given samples of the candy in August of 1985. Representatives for the Plaintiffs, however, claim that the fall of 1987 was the earliest they were aware of the sale of Circos in the United States.

Defendants also maintain that Plaintiffs' awareness of their activity hit closer to home in the summer of 1988 when Confiteria and Conusa purchased one of Plaintiffs' manufacturing facilities in Canajahorie, New York. Defendants claim that they told Plaintiffs that they intended to use the factory to begin manufacturing Circos in the United States. Plaintiffs, however, maintain that at no time during the negotiation of the sale did Defendants ever mention manufacturing Circos in Canajahorie. The written agreement reached between the two parties after the sale does not contain any mention of the manufacture of Circos.

Although Plaintiffs concede that by the fall of 1987 they were aware of the manufacture of Circos in the United States, they maintain that they did not institute any legal action at that time because, while they were exploring such action, Circos sales fell off in early 1988. Figures submitted by Defendants do show a sharp decline in sales from 1987 to 1988. However, in July or August of 1988 when Conusa dropped the "Chimos" name and began using "Circos", sales picked up, and in October of 1988 Plaintiffs state that they learned that Conusa had contacted K–Mart, one of Lifesavers major national accounts. It was at that time that Plaintiffs reinitiated their exploration of bringing a lawsuit against Conusa and Confiteria, and this lawsuit was filed on March 1, 1989.

■ In the Fourth Circuit, *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550

F.2d 189 (4th Cir.1977), and the cases decided thereunder, govern the consideration of a motion for a preliminary injunction. Under *Blackwelder*, the court is to consider four factors in determining whether to grant or withhold the relief requested: (1) plaintiff's likelihood of success on the merits; (2) whether plaintiff will suffer irreparable harm if interim relief is denied; (3) the injury to the defendant in the event that an injunction is granted; and (4) the public interest. The greater the likelihood of success the less the need to show the probability of irreparable harm. On the other hand, where the likelihood of success is uncertain the moving party must make a strong showing of the probability of irreparable harm in order to obtain injunctive relief. *North Carolina State Ports Authority v. Dart Containerline Co., Ltd.*, 592 F.2d 749 (4th Cir.1979).

■ For all of Plaintiffs' claims, likelihood of success on the merits depends upon whether Plaintiffs can establish likelihood of confusion as to the source, origin, or sponsorship of the products involved. *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) (discussing similarity of tests under 15 U.S.C. §§ 1114 and 1125 and N.C.Gen.Stat. § 75–1.1). In the context of a trademark infringement dispute, several courts have held that where likelihood of confusion is established likelihood of success on the merits as well as risk of irreparable harm follow. *See Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir. 1982); *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852 (7th Cir.1982). *See also* 2 J. McCarthy, *Trademarks and Unfair Competition* §§ 30:18 at 489 & n. 12 (2d ed. 1984), and cases cited thereunder. Therefore, the key factor for consideration with regard to this motion is the likelihood of Plaintiffs' success in establishing likelihood of confusion.[3]

---

**3.** Plaintiffs note that with regard to their claim under 15 U.S.C. § 1125, which they have styled a "trade dress" infringement claim, they must also establish that their trade dress has achieved a secondary meaning, *i.e.,* that the buying public "associates that dress with a single producer or source rather than just with the product itself."

*LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 78 (2d Cir.1985). Such a showing is also necessary with regard to any alleged infringement regarding the ring configuration *per se,* for marks on the Supplemental Register, unlike those on the Principal Register, also require a showing of secondary meaning. *See supra* n. 1. Given that

In assessing likelihood of confusion, the Fourth Circuit has recently identified several factors to consider. These include the strength of the Plaintiff's mark, the similarity between the Plaintiff's mark and the allegedly infringing mark, the similarity between the products and services the Plaintiff and Defendant offer, the similarity of sales methods, the similarity of advertising methods, the Defendant's intent, and proof of actual confusion. *Andrews,* 783 F.2d at 448 n. 24. Starting with the first of these factors, there is no dispute that Lifesavers' shape is a strong trademark reinforced by its long history of extensive use. This fame makes it likely that consumers will connect any candy product shaped like a lifesaver to be made by Lifesavers. *Cf. CPC Int'l, Inc. v. Skippy, Inc.,* 651 F.Supp. 62, 67 (E.D.Va.1986) (because of fame of Skippy mark, "consumers in today's world will automatically connect any food product bearing the mark 'SKIPPY' with SKIPPY peanut butter").

Turning to similarity between Plaintiffs' and Defendants' marks, the court finds such similarity to be evident. The candies are of the same size, shape, and color, and, although Defendants argue that the raised print on their candies is clearly different from that of Plaintiffs', even at close range the lettering is hard to detect. Since infringers rarely identically copy a mark, such a small difference does not argue against similarity. *See WSM, Inc. v. Ten-*

*nessee Sales Co.,* 709 F.2d 1084, 1087 (6th Cir.1983) (minute differences irrelevant because infringers rarely make identical copies).

As to similarity of product, sales methods, and advertising, Plaintiffs note that Defendants have not entered the consumer advertising area. However, the similarity of products and sales methods weighs heavily in Plaintiffs' favor, for both products are hard roll candy products sold in the same type of outlets. Finally, as to Defendants' intent and evidence of actual confusion, Plaintiffs have not produced any direct evidence. However, the possibility that Defendants coincidentally adopted a configuration highly similar to that of Plaintiffs is unlikely, and it is clear that Defendants intend to compete with Lifesavers and are aware of the Lifesavers candy shape.

Most importantly, on the issue of likelihood of confusion, several factors support the existence of such confusion, especially the actual configuration of the candy. While the fact that the configuration would not be evident until a consumer opened the candy might raise some question as to likelihood of confusion at purchase, confusion in the post-sale context is clearly actionable under the Lanham Act. In the Fourth Circuit, *Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145 (4th Cir.1987), recognizes such protection, basing it upon the harm that the possesser of the valid mark could

trade dress traditionally encompasses the total impression made by a product, and Plaintiffs have not attacked Defendants' packaging as a "hole," the court is somewhat confused as to the nature of Plaintiffs' claim. However, from a review of the pleadings filed, it appears that Plaintiffs are challenging Defendants' use of an enlarged "o" in its product name which is similar to a use of the "o" in certain of Lifesavers' labels (*e.g.,* Wintergreen spelled as "WintOgreen" with the "O" emphasized and drawn to look like the candy), as well as Defendants' use of the candy configuration in its advertising, which is also very common in Lifesavers' advertising.

To the extent that Plaintiffs must show secondary meaning with regard to their claim under Section 1125, the court is satisfied that such has been shown. In the Fourth Circuit, trade dress acquires secondary meaning where "the consuming public associates that product with a

certain producer, and, most importantly, is likely to make that same association when the trade dress is used on another producer's product." *M. Cramer Mfg. Co. v. Andrews,* 783 F.2d 421, 449 (4th Cir.1986). Here it is clear that the configuration of Lifesavers does not suggest just a hard roll candy product but instead is a configuration that would be associated with a particular producer. Also, with regard to the four factors the Fourth Circuit has set out in *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1528–29 n. 3 (4th Cir.1984), to analyze whether a particular trade dress has acquired secondary meaning— namely long use, advertising, sales volume, and identity of service origin in the minds of the purchasing public—Plaintiffs meet all four of these criteria. Also, whether or not functionality is treated as a part of the Plaintiffs' burden of proof or a defense (courts are split on this issue), the configuration of Lifesavers candy clearly is not functional.

suffer if one seeing or sampling the product after sale regarded it to be of poor quality. The law in other circuits is similar. *See, e.g., American Home Prods. Corp. v. Barr Laboratories, Inc.*, 834 F.2d 368, 371 (3d Cir.1987) (recognizing possibility of post-sale confusion); *United States v. Torkington*, 812 F.2d 1347, 1352–53 (11th Cir.1987) (post-sale confusion satisfies likely-to-confuse test).

Thus, Plaintiffs have made a strong showing of likelihood of confusion and a likelihood of success on the merits of their claim follows.[4] Therefore, under *Blackwelder* Plaintiffs need not show a strong probability of irreparable harm for an injunction to issue. This is important for, while various courts have held that risk of irreparable harm necessarily follows likelihood of confusion, the court is not as strongly persuaded that Defendants' continued activity would pose a substantial risk to Plaintiffs considering their relative strength in the market. However, given Defendants' prominence in the Spanish market, their ability to continue to sell Circos outside the United States, and the small volume of sales of Circos in the United States, neither can it be said that the harm to Defendants would be great in the event that a preliminary injunction issued. Consequently, a balancing of the various factors enumerated in *Blackwelder* supports the issuance of a preliminary injunction.

■ Defendants' primary contention opposing Plaintiffs' motion has been that, because Plaintiffs delayed in bringing an action for preliminary injunction, they cannot now contend that they would be irreparably harmed in the event that an injunction did not issue. However, while a delay may constitute a lesser version of laches in showing a lack of irreparable harm, "laches should not necessarily always be measured from defendant's very first use of the contested mark, but from the date that defendant's acts first significantly impacted on

plaintiff's goodwill and business reputation." 2 J. McCarthy, § 31:6 at 570. Here, Plaintiffs were contemplating action in late 1987 but had their concerns alleviated when the sale of Circos dropped considerably in 1988. However, when sales picked up again in late 1988 and Conusa contacted K–Mart in October, Plaintiffs again considered filing a lawsuit. Thus, given this history of Circos sales in the United States, Plaintiffs' delay in filing suit despite their knowledge of Circos sales in the fall of 1987 at the latest does not appear to be such unreasonable delay as would give rise to a claim of laches. It should also be noted that laches also involves undue prejudice to defendants which applies only where defendants have already built up a valuable business. *See* 2 J. McCarthy § 31:5 at 564.

■ Defendants also strongly argue that an expiration of a patent which Plaintiffs' predecessors once held on the Lifesavers' configuration in the early 1930's now bars them from arguing any exclusive rights in the configuration. However, patent, trademark, and copyright rights all exist independent of one another, and "the presence or absence of one does not automatically preclude protection under another." 1 J. McCarthy § 6:1 at 147. "A thing may be in the 'public domain' for one area of law, but not for the others." *Id.* at 148. *See also In re Mogen David Wine Corp.*, 328 F.2d 925 (CCPA 1964) (patent rights separate and distinct from those appertaining to trademarks). Therefore, the presence or absence of any patent protection for Plaintiffs' ring configuration does not affect the independent rights the Plaintiffs may have under trademark law.

Finally, Defendants argue that their clear labeling of their product argues strongly against likelihood of confusion and also that the raised letters on their candy are functional and clearly distinguish their candy from Lifesavers. However, as

---

**4.** While the court has noted that the same standard applies to likelihood of success on the merits of all of Plaintiffs' claims, the focus in this analysis has been on Plaintiffs' claim of trademark infringement under Section 1114.

In this regard, it bears noting that likelihood of success on any one claim justifies the entry of injunctive relief in Plaintiffs' favor. *See Tootsie Roll Indus., Inc. v. Sathers, Inc.*, 666 F.Supp. 655, 658 (D.Del.1987).

noted earlier, the virtually identical appearance of the candies themselves raises a strong likelihood of confusion in the post-sale context, and it is also possible that consumers seeing the Circos label might assume that Plaintiffs were marketing their Lifesavers candies under a new mark. *See, e.g., Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145 (4th Cir.1987) (where counterfeit shirts bore mark confusingly similar to Ralph Lauren's polo player mark, fact that labels inside shirt collars identified manufacturer as someone other than Ralph Lauren did not preclude likelihood of confusion, for purchaser might suppose that Ralph Lauren had adopted another trademark). As to the lettering, even on a close side-by-side comparison of the two candies, it is difficult to actually discern what lettering is on the candies, and it is highly unlikely that any consumer would make such an examination before popping a candy into his or her mouth. Also, as to Defendants' functionality claim regarding the letters, it is apparent from Plaintiffs' display of the numerous hard candies on the market that the majority do not use any type of lettering on their candies. Therefore, it does not appear that the lettering would constitute a functional feature.

The court is aware that Defendants have also claimed that Plaintiffs were aware of their desire to manufacture Circos in the United States at the time that the Canajahorie facility was purchased. Thus, there is the possibility that Plaintiffs may have acquiesced in such activity. However, at the preliminary injunction stage, the court still finds the Plaintiffs have made a strong showing of likelihood of success on the merits given the confusing similarity of the candies, their institution of this lawsuit once Defendants' efforts to market Circos in the United States escalated, and the absence of a long history of business dealings between these two companies which could lend support to an argument that acquiescence existed. *See, e.g., CBS, Inc. v. Man's Day Pub. Co.*, 205 U.S.P.Q. 470 (TMTAB 1980) (reasonable doubt as to likelihood of confusion existed where plaintiff's employee suggested magazine idea

and employer rejected it but gave employee permission, encouragement, and advice to pursue concept on his own). *But cf. Hershey Foods Corp. v. Cerreta*, 195 U.S.P.Q. 246 (TMTAB 1977) (even where plaintiff's employees encouraged applicant's use of mark, such encouragement was held not to constitute acquiescence, especially since plaintiff objected two months later). Thus, the court finds that any business dealings between Conusa, Confiteria, and Planters does not negate Plaintiffs' showing of strong likelihood of confusion. Therefore, a preliminary injunction in Plaintiffs' favor shall issue.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## ORDER

Upon the complaint, moving declarations, memoranda and exhibits offered in support of or opposition to this motion, and the oral arguments of counsel at a hearing on this motion held March 15, 1989, and for the reasons stated in the memorandum opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED, pursuant to Rule 65, Fed.R.Civ.P., that Plaintiffs' motion for preliminary injunction is GRANTED;

IT IS FURTHER ORDERED that Defendants, their agents, servants, employees, officers, and all persons in active concert and participation with them are hereby ENJOINED as follows pending final determination of this action:

1. From using in the United States a ring configuration in connection with the manufacture, sale, offering for sale, displaying, labeling, promoting, or advertising of mints or candy;

2. From using any logo, tradename, or trademark which may be calculated to represent falsely or which has the effect of representing falsely that the services or products of Defendants are sponsored by, authorized by, or in any way associated with Plaintiffs;

3. From infringing on Plaintiffs' rights in their federally registered trademarks;

4. From otherwise unfairly competing with Plaintiffs;

5. From falsely representing themselves as being connected with Plaintiffs or sponsored by or associated with Plaintiffs;

6. From using any reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' trademarks in connection with the publicity, promotion, sale, or advertising of goods sold by Defendants in the United States;

7. From affixing, applying, annexing, or using in connection with the sale of any goods a false description or representation including words or other symbols tending to describe falsely or represent such goods as being those of Plaintiffs and from offering such goods in commerce in the United States; and

8. From using any trademark or tradename in connection with the sale of any goods which may be calculated to represent falsely such goods as being connected with, approved by, or sponsored by Plaintiffs; and

IT IS FURTHER ORDERED that Defendants RECALL forthwith from all customers any product already distributed by Defendants consisting of or showing the ring configuration complained of, and NOTIFY forthwith all customers to which literature or sales materials concerning the product have been distributed or from which orders for said product have been solicited, of the terms of this order.

This order shall become effective upon Plaintiffs' posting of a bond in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).