**SEA–ROY CORPORATION and Ameramax Contractors Equipment and Suppliers, Inc., Plaintiffs,**

v.

**PARTS R PARTS, INC., a/k/a P.R.P., Inc.; Rammax Maschinenbau GMBH; Farymann Diesel GMBH; Kracht GMBH; Multiquip, Inc.; and Sunbelt Equipment & Rentals, Inc., Defendants.**

**MULTIQUIP, INC., and Rammax Maschinenbau GMBH, Counterclaimants,**

v.

**Chris R. SMITH and Trimm, Inc., Additional Parties on Counterclaims.**

No. 1:94CV00059.

United States District Court, M.D. North Carolina, Durham Division.

June 21, 1995.

---

while the action has been pending in this court.

Norwood Robinson, Michael Lindsay Robinson, Kevin L. Miller, Robinson Maready

Lawing & Comerford, L.L.P., Winston–Salem, NC, Daniel Snipes Johnson, King, Walker, Lambe & Crabtree, Durham, NC, for Sea–Roy Corp., AMERAMAX Contractors Equipment and Supplies, Inc.

Michael George Adams, Parker, Poe, Adams & Bernstein, Charlotte, NC, for Parts R Parts, Inc.

Michael Lindsay Robinson, Kevin L. Miller, Robinson Maready Lawing & Comerford, L.L.P., Winston–Salem, NC, Daniel Snipes Johnson, King, Walker, Lambe & Crabtree, Durham, NC, for Trimm, Inc., Chris R. Smith.

Richard M. Hutson, II, Maxwell & Hutson, Durham, NC, Alan M. Wiseman, Robert E. Leidenheimer, Jr., Gaspare J. Bono, Howrey & Simon, Washington, DC, for Rammax Maschinenbau, GMBH, Multiquip, Inc.

C. Ralph Kinsey, Jr., Richard L. Farley, Underwood, Kinsey, Warren & Tucker, P.A., Charlotte, NC, for Sunbelt Equipment & Rentals, Inc.

## MEMORANDUM OPINION

OSTEEN, District Judge.

Defendant–Counterclaimant Rammax Maschinenbau GmbH ["Rammax"] owns the registered trademark "RAMMAX" ["the RAMMAX mark"]. Rammax, and its American distributor, Defendant–Counterclaimant Multiquip, Inc. ["Multiquip"], have moved for a preliminary injunction against Plaintiff–Counterdefendants Sea–Roy Corporation ["Sea–Roy"] and AMERAMAX Contractors Equipment & Supplies, Inc. ["ACES"] and Counterdefendants Trimm, Inc., and Chris R. Smith. For the reasons stated herein, Rammax and Multiquip's Motion for Preliminary Injunction will be denied.

## I. BACKGROUND

The parties have submitted several affidavits[1] from which the court finds the following facts. Rammax is a German-based corpora-

tion which manufactures and distributes trench compacting equipment under the RAMMAX mark. From 1981 until some time in 1992, Sea–Roy was an American distributor of Rammax equipment. With the approval of Rammax, Sea–Roy operated its distribution business under the name "Rammax Machinery Company."

On November 23, 1992, Rammax terminated its distributorship agreement with Sea–Roy. Rammax thereafter entered a distributorship agreement with Multiquip and has since distributed its equipment throughout the United States solely through Multiquip. After being terminated by Rammax, Sea–Roy became a competitor of Rammax and began selling trench compacting equipment under the "AMERAMAX" mark. Trimm, Inc. manufactures the equipment for Sea–Roy, and ACES distributes the goods for Sea–Roy in North Carolina and Florida. Sea–Roy admits that it is no longer entitled to do business under the Rammax name or to use the RAMMAX mark and has stated that it "ceased doing business under the name Rammax Machinery Company in a timely manner." (Pl.'s Reply to Countercl. of Rammax ¶ 17.)

On February 7, 1994, Sea–Roy filed a complaint against several Defendants, which was later amended to include Rammax and Multiquip as Defendants, arising out of an alleged conspiracy among competitors in the construction equipment industry and out of the termination of the distributorship agreement between Sea–Roy and Rammax. The Amended Complaint alleges antitrust claims, tort claims, and a claim for breach of contract. Several parties, including Rammax and Multiquip, responded with counterclaims. Both Rammax and Multiquip allege counterclaims for, among other things, infringement of the RAMMAX mark.

In late April 1995, Rammax and Multiquip learned that Sea–Roy's address and phone

1. Sea–Roy has filed an objection to the affidavit of Roger Euliss, submitted in support of Rammax and Multiquip's motion. Sea–Roy contends that large parts of the affidavit are inadmissible as speculative and as legal conclusion. The court has examined the affidavit, and although it may overstate its case (but no more so than the affidavits submitted in support of Sea–Roy's opposition), it is not objectionable in its entirety. The court will winnow through the admissibility of all the submitted affidavits, and Sea–Roy's objection will be overruled.

number [2] were listed in two publications under the Rammax name. The first publication, the March 25, 1995, *Construction 1995 Buyer's Guide,* lists the Sea–Roy address and phone number under the heading "Rammax Machinery, Inc." *Construction* is a trade publication that is distributed yearly in Maryland, West Virginia, Virginia, and North Carolina. The 1995 *Construction* issue was circulated to 7,029 persons and/or businesses. (Ex. A to Smith Aff.) The second publication, the January 1995–96 *Carolina Directory Company Greensboro Edition,* lists the Sea–Roy address and phone number under the heading "Rammax Machinery Co." in the yellow pages section. The *Carolina Directory Company Greensboro Edition* is a "knock-off" of the Southern Bell telephone book. Sea–Roy did not pay for either of the listings. Neither of the listings will be updated until 1996.

There is no evidence in the record as to how the listing in the *Carolina Directory Company Greensboro Edition* originated. Sea–Roy did not know of the listing before it took place, and on May 8, 1995, sent a letter to Carolina Directory Company informing it that Sea–Roy no longer did business under the Rammax name and asking that any reference to Rammax be deleted in the future. (Ex. H to Smith Aff.) As to the listing in *Construction* magazine, however, the evidence indicates that Sea–Roy was aware of the listing of its address under the Rammax name as early as the 1992 issue of the magazine. In a letter dated May 15, 1993, Sea–Roy informed the publisher of *Construction* that "RAMMAX Machinery Company of Durham has a new name, AMERAMAX," that "[t]ies have been broken with Rammax Germany," and asked that the publisher "show a reference under Rammax Machinery Company to our new name, AMERAMAX." (Ex. B to Smith Aff.)

Rammax and Multiquip ["Movants"] now seek a preliminary injunction to prevent further use of the RAMMAX mark, requesting that the court (1) enjoin Sea–Roy, ACES, Trimm, and Smith ["Nonmovants"] from using the RAMMAX mark, (2) require Non-movants to forward to Rammax and Multiquip all telephone communications, facsimile communications, and mail directed to "Rammax Machinery Co.," (3) require that a message be placed on the phone line at issue informing callers of the proper phone number for Rammax, and (4) require that a corrective letter be sent by Nonmovants to all persons and/or businesses who received a copy of the 1995 *Construction* magazine with the incorrect listing, informing those persons and/or businesses of the correct address and phone number for Rammax.

## II. DISCUSSION

Preliminary injunctive relief is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Medical Corp.,* 952 F.2d 802, 811 (4th Cir.1991) (citations omitted). In the Fourth Circuit, a district court considering the appropriateness of preliminary injunctive relief must apply a "balance of hardship" test wherein four factors are given consideration: (1) the movant's likelihood of success on the merits of the case, (2) the probability that the movant would be irreparably harmed without a decree, (3) the harm to the nonmovant which would result from issuance of the preliminary injunction, and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189, 196 (4th Cir.1977). All these factors "are intertwined and each affects in degree all the others." *Id.* Hence, "[t]he decision to grant or deny a preliminary injunction depends upon a 'flexible interplay' among all factors considered." *Id.* The irreparable harm to the movant and the harm to the nonmovant are the two most important factors. *Id.* at 196.

### A. Irreparable Harm to Movants

In a trademark infringement case, risk of irreparable harm necessarily follows from establishment of a likelihood of confusion among consumers. *Nabisco Brands, Inc. v. Conusa Corp.,* 722 F.Supp. 1287, 1290

---

**2.** Sea–Roy does not contest that the Durham address and phone number listed (Highway 70E, Durham, NC, (919) 596–5320) are in fact its address and phone number.

(M.D.N.C.), *aff'd,* 892 F.2d 74 (4th Cir.1989); *see also McNeil Lab., Inc. v. American Home Prod. Corp.,* 416 F.Supp. 804, 809 (D.N.J.1976) (irreparable harm results from loss of trademark holder's ability to regulate quality of goods sold under the infringed mark). In the case at bar, however, the infringing activity complained of (the address and phone number under the Rammax name) could confuse consumers as to source only if they called the phone number or went to the address. Consumers who simply looked at the listing would not know that the address and phone number listed actually belonged to Sea–Roy. Thus, to establish irreparable harm, Rammax must show that a recipient of the infringing listings actually called the number or went to the address in search of Rammax products.

Rammax has produced no evidence indicating anyone has called the listed phone number or gone to the listed address in search of Rammax goods. Although the incorrect listing is in a trade journal, Rammax has failed to introduce any evidence that it received orders as a result of the trade journal in the past, or that consumers relied on the trade journal to purchase Rammax products. Consumers may in fact rely on *Construction* magazine and its incorrect listing to reach Rammax; however, Rammax has failed to introduce any evidence to support such a contention. In sum, Rammax has produced little evidence of harm other than an assumption that consumers who receive *Construction* magazine will rely on the publication to locate Rammax. The risk of irreparable harm is therefore slight.

B. Likelihood of Success on the Merits

■ Movants allege that the listing of the Sea–Roy address and phone number under the Rammax name constitutes trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125. The standard for recovery under these two statutes is the same: Movants must show that the RAMMAX mark is a valid, protectable mark and that the alleged infringer's use of the mark is likely to cause consumer confusion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922, 930 (4th Cir.1995). Nonmovants

have not contested the protectability of the RAMMAX mark or the likelihood of confusion resulting from any infringing use. Nonmovants contest only whether any use of the mark took place on their part.

■ Nonmovants assert that an injunction is improper because they were not involved in the placing of the listings in the two publications at issue and that they had no intent to infringe upon the RAMMAX mark. With respect to their lack of intent defense, however, the Fourth Circuit has stated that intent to infringe need not be established before one can be held liable for direct infringement:

> Trade mark [sic] infringement does not ordinarily turn upon the morality of the defendant's intentions in adopting his mark. If he adopts the same mark for similar goods in the same market, he infringes whether his intention was reprehensible or whether, because of ignorance of the plaintiffs' mark, he was entirely innocent.

*Allen v. Standard Crankshaft & Hydraulic Co., Inc.,* 323 F.2d 29, 36 (4th Cir.1963). Thus, lack of intent is no defense to trademark infringement; intent is just one of the factors considered as to the question of likelihood of confusion. *Polo Fashions, Inc. v. Gordon Group,* 627 F.Supp. 878, 886 (M.D.N.C.1985). However, Movants must show that Nonmovants actually used or adopted the RAMMAX mark; this is not a case where Movants are alleging that Nonmovants contributorily infringed upon the mark by intentionally inducing another to infringe. *See Inwood Lab., Inc. v. Ives Lab., Inc.,* 456 U.S. 844, 853–54, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982) (one who does not adopt mark is liable for contributory infringement where he "intentionally induces another to infringe a trademark").

1. *Carolina Directory Company Greensboro Edition Listing*

■ There is no evidence in the record from which the court can find that Nonmovants in any way used or adopted the RAMMAX mark with respect to the listing in the *Carolina Directory Company Greensboro Edition.* The evidence submitted to the

court indicates that Nonmovants did not know of the listing prior to its publication, and immediately after being informed of the publication notified the Carolina Directory Company of the incorrect listing. Without evidence that Nonmovants in some way knew of and adopted the listing, infringement cannot occur. *Cf. Mini Maid Serv. Co. v. Maid Brigade Sys., Inc.,* 967 F.2d 1516, 1519–21 (11th Cir.1992) (franchisor has *no duty of* "reasonable diligence" to prevent franchisee from infringing on trademarks of others). Therefore, Movants have failed to show a likelihood of success on the merits with respect to the *Carolina Directory Company Greensboro Edition* listing.

### 2. *Construction* Magazine Listing

■ Nonmovants assert that there is also no evidence that they adopted the listing in *Construction* magazine. However, a review of the correspondence between Sea–Roy and the publisher of *Construction* magazine indicates that Sea–Roy knew of the listing of its address under the Rammax name after the distributorship agreement with Rammax was terminated and adopted the Rammax listing.

In May 1993, Sea–Roy notified the publisher of *Construction* magazine by letter that Rammax Machinery Company of Durham had changed its name to Ameramax. In this letter, Sea–Roy did not request that its address be removed from the Rammax listing, but instead asked the publisher to "show a reference under Rammax Machinery Company to our new name, AMERAMAX." (Ex. B to Smith Aff.)[3] By asking the publisher to list its Durham address and phone number under the Rammax name, Sea–Roy was using the Rammax name to identify itself as a source of goods. Such a use is likely to cause consumer confusion to persons who use the listing to locate Rammax and would constitute infringement of the RAMMAX mark. *See Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.,* 514 F.2d 665, 670 (5th Cir.1975) (unauthorized use of a mark which has effect of misleading public to believe that user is sponsored or approved by trademark holder can constitute infringement); *Burger King Corp. v. Mason,* 710 F.2d 1480, 1492 (11th Cir.1983) (holding that "[c]ommon sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks"), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984).

Sea–Roy asserts that it expected the Rammax listing to be automatically deleted by the publisher after the 1993 issue of *Construction,* in light of correspondence during November 1993 wherein the publisher stated that it was "cleaning house" and that any listing not updated for the 1994 issue would be deleted. (Ex. C to Smith Aff.)[4] Thus,

---

3. This letter, dated May 15, 1993, reads in pertinent part:

> Dear [Publisher]:
>    Joe Woods suggested I send you a copy of our press Release for publication in new England Construction, Constructioneer and Construction magazines. We are announcing that RAMMAX Machinery Company in Durham has a new name, AMERAMAX. Ties have been broken with Rammax Germany since they appointed a Japanese-owned company as their exclusive distributor in the U.S.
>    We are still the same people from Durham, NC that you have been dealing with for years ... And another new announcement, we are now building the P33 in Durham!
>    . . . .
>    It would be very helpful to those people and to our new role in the market if your publications would publish our Press Release, and in your next Buyer's Guides and/or Manufacturer's listings, show a reference under Rammax Machinery Company to our new name, AMER-AMAX.

Sincerely,
[Sea–Roy Corporation]

4. This letter from the publisher to Sea–Roy, dated November 1993, reads:

> Dear Friend:
>    Once again we are collecting information for our annual Buyers Guide.
>    Each year at this time, we write to all the manufacturers who were included in the directory the year before to give them the opportunity to update their listing for the new issue. And each year, for one reason or another, some manufacturers fail to contact us. In the past, if a listing was not updated, we would pick up the year-old listing.
>    This year we are "cleaning house". [sic] In an effort to provide an accurate volume for our readers, we will have to delete any listing that is not updated.
>    Your listing is important! Please help us and send us your current list of dealers for the territories below:

according to Sea–Roy, it cannot be responsible for any listing which occurred after the 1993 issue of *Construction*. Such a contention is not so easily accepted, however, in light of earlier 1993 correspondence sent to the publisher by Sea–Roy. In May 1993, Sea–Roy sent a letter to the publisher requesting that it be referenced under the Rammax name. (Ex. B to Smith Aff.) Thus, Sea–Roy had already sent information to the publisher concerning an update for the 1994 magazine when it received the November 1993 letter. Sea–Roy could not rely on the publisher to delete the Rammax listing from the 1994 issue under the terms of the November 1993 correspondence, when it had already instructed the publisher as to what listing to enter under Rammax in the 1994 issue. Indeed, in a December 3, 1993 letter to the publisher responding to its November 1993 letter, Sea–Roy stated only that "we have changed our name from Rammax Machinery Company to AMERAMAX Machinery Company" and did not mention or cancel the prior requested listing under the Rammax name. (Ex. C to Smith Aff.)

Thereafter, Sea–Roy never explicitly requested that the Rammax listing be changed before the 1995 issue was published. Sea–Roy contends that handwritten notes evidencing a telephone conversation in April 1994 between the publisher and Sea–Roy's advertising manager indicate that the publisher was instructed to remove the listing. However, these notes are at best ambiguous as to what took place during the conversation.[5] Moreover, in a November 15, 1994, handwritten letter to the publisher concerning the 1995 issue of *Construction*, Sea–Roy did not mention the incorrect Rammax listing

in the 1993 and 1994 issues. (Ex. E to Smith Aff.) Not until April 26, 1995, after the 1995 issue of *Construction* had been circulated, did Sea–Roy specifically inform the publisher of the incorrect listing of its address and phone number under the Rammax name and specifically request that it be deleted. (Ex. F to Smith Aff.)

Nonetheless, some evidence does support Sea–Roy's contention that it took proper action to remove the Rammax listing. Records from the publisher indicate that, although the Rammax listing was not corrected in or removed from *Construction* magazine, the Rammax listing was properly removed from two other trade publications generated by the same publisher. Moreover, the publisher has filed an affidavit indicating that Sea–Roy informed the publisher of the incorrect Rammax listing in *Construction* magazine in 1993 and that the listing was not changed as the result of a clerical error by the publisher. (Swartz Aff.) Although a review of the correspondence between the publisher and Sea–Roy indicates that this error could as much be the result of Sea–Roy's failure to clearly and specifically inform the publisher of the incorrect listing than the result of an oversight by the publisher, the fact that the listing was correctly removed from two other publications indicates that Sea–Roy may have taken some proper action to remove the listing.

In sum, the likelihood of success on the merits of Movants' trademark infringement claim with respect to the Rammax listing in the 1995 edition of *Construction* magazine is a very close question.[6] Sea–Roy adopted the infringing listing in 1993 and did not clearly request that it later be removed. Nonethe-

....
Please respond by our publishing deadline on December 3rd. Feel free to call me if you have any questions at all.
Sincerely,
Colleen Tarantino
Buyers Guide Editor

5. The handwritten note reads:
4/25
Called Colleen Tarantino of HES 800 972 200, advised her of wrong product list for AMC, no distributors listed as sent in, and listing for Rammax Mach. Co. She said her fault & apologized.

"Construction" 3/28/94

6. Sea–Roy is a former distributor of Rammax that sells goods virtually identical in appearance and function to those sold under the RAMMAX mark, under a name that suggests that it is the American division of Rammax. However, this motion was brought only to correct the listing of Sea–Roy's address and phone number under the Rammax name in trade publications. Movants have not sought, in the motion at bar, to enjoin Sea–Roy from using the AMERAMAX mark because it may infringe on the RAMMAX mark.

less, the fact that the publisher properly removed the listing from two other trade publications indicates that Sea–Roy may have taken some proper steps to correct the listing. Thus, Movants have shown a fair likelihood of success on the merits, but have not presented an especially strong or overwhelming case. Whatever likelihood of success on the merits exists, however, does so only with respect to the listing in *Construction* magazine. Movants have failed to produce any evidence linking Sea–Roy to the Rammax listing in the *Carolina Directory Company Greensboro Edition*. Moreover, this likelihood of success on the merits exists only as to Sea–Roy. Movants have produced no evidence indicating that ACES, Trimm, or Smith were in any way involved in the adoption of the listing in *Construction* magazine.

### C. Harm to Nonmovants

The harm Sea–Roy would suffer as a result of an injunction is directly related to the extent of relief afforded by the injunction. Sea–Roy admits that it is not entitled to use the RAMMAX mark. Furthermore, requiring it to send a corrective letter to recipients of the incorrect listing in *Construction* magazine is at worst a requirement that Sea–Roy remedy an acknowledged incorrect use of its address and phone number for which it contends it is not responsible. Requiring Sea–Roy to place a message on the phone line at issue, however, could be potentially harmful to Sea–Roy, because the message could confuse customers who intended to call AMER-AMAX as to whether AMERAMAX had actually been reached. Nevertheless, the harm to Sea–Roy likely to result from issuance of a limited injunction is slight.

### D. Public Interest

In light of the fact that only the listing in *Construction* magazine can be found to be infringing, the public interest in issuance of an injunction is also slight. However, the interests of the 7,029 recipients who received the incorrect listing in *Construction* magazine would best be served by their receiving some notice of the incorrect listing for Rammax.

### E. Balancing of Hardships & Appropriate Relief

▮ In applying the "balance of hardships" test to determine if an injunction should issue, the irreparable harm to the movant and the harm to the nonmovant are the two most important factors. *Blackwelder*, 550 F.2d at 196. Rammax and Multiquip must make a "clear showing" that "actual" and "immediate" irreparable harm would result if relief is denied. *Direx Israel*, 952 F.2d at 812; *Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir.1983). If this burden can be met, the court must then balance the likelihood of irreparable harm to the movant against the likelihood of harm to the nonmovants which would result from the grant of such relief. *Blackwelder*, 550 F.2d at 195. As this balance tips away from the movant, a stronger showing of likelihood of success on the merits is required. *Direx Israel*, 952 F.2d at 813. Indeed, when this balance does not tip "decidedly" or "significantly" in the movant's favor, the movant must show a "probability" of success on the merits which requires proof of a "very clear and strong case." *Id.*

In the case at bar, application of this test requires that Movants' request for injunctive relief be denied. In light of Movants' failure to present evidence indicating that any of the recipients of *Construction* magazine have ever used the Rammax listing to purchase Rammax goods, no concrete proof of irreparable harm has been shown. Furthermore, the record supports a finding of only a fair likelihood of success on the merits on a trademark infringement claim based upon the incorrect Rammax listing in *Construction* magazine, despite Sea–Roy's initial wrongful adoption of the listing. Although Sea–Roy may have taken insufficient action to prevent the incorrect Rammax listing from appearing in the 1995 issue of the magazine, there is simply insufficient evidence in the record to support Movants' contention that irreparable injury would result. Therefore, the record in this case cannot support the issuance of an injunction under the exacting standard set forth by *Blackwelder* and its progeny.

## III. CONCLUSION

For the reasons stated herein, Rammax and Multiquip's Motion for Preliminary Injunction will be denied.